KARL L. DAHLSTROM AND CLARA J. DAHLSTROM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 19904–83.     Filed November 19, 1985.

Karl L. Dahlstrom and Clara J. Dahlstrom, pro se.
*David W. Johnson* and *Sheri Wilcox,* for the respondent.

OPINION

NIMS, *Judge*: This matter is before the Court on petitioners' motion for extension of time to answer requests for admission, petitioners' motion to withdraw admissions, petitioners' motion for a protective order, respondent's motion for summary judgment pursuant to Rule 121,[1] and respondent's motion to compel responses to respondent's interrogatories to petitioners and to compel the production of documents or to impose sanctions under Rule 104(c).

Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows:

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 in effect for the years in question and currently in effect.

| Year | Deficiency | Additions to tax sec. 6653(b) |
|------|-----------|-------------------------------|
| 1977 | $155,733 | $77,866.50 |
| 1978 | 341,689 | 170,844.50 |
| 1979 | 788,152 | 394,076.00 |

Petitioners Karl L. Dahlstrom (petitioner) and Clara J. Dahlstrom, husband and wife, resided in Texas at the time their petition was filed.

During the years in issue, petitioner promoted and sold a tax shelter program he had devised utilizing foreign trust organizations. On June 2, 1981, a grand jury empaneled in the Western District of Washington indicted petitioner for aiding and assisting others in the preparation of false income tax returns and unlawfully impeding and impairing the lawful functions of the Internal Revenue Service as a result of his promotion and sale of this tax shelter program. On March 8, 1982, the District Court for the Western District of Washington convicted petitioner of these charges. The Ninth Circuit, however, reversed petitioner's conviction in *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), cert. denied 466 U.S. 980 (1984), finding that the evidence was insufficient to support the conviction.

Subsequent to petitioner's criminal conviction, respondent conducted a civil examination of petitioners' income tax returns for the years in issue. On November 22, 1982, the United States filed an ex parte motion with the District Court for the Western District of Washington requesting disclosure to the Examination Division of the Internal Revenue Service of all documents and records relating to petitioner which were presented to the grand jury. On December 7, 1982, the court entered an order pursuant to rule 6(e), Federal Rules of Criminal Procedure, authorizing disclosure of the requested documents and records. Before the grand jury materials were delivered to respondent, however, the court vacated its rule 6(e) order and granted a continuance to allow petitioner to respond to respondent's disclosure motion. The District Court subsequently entered a rule 6(e) order granting respondent's motion for disclosure on January 26, 1983.

On March 12, 1984, the Ninth Circuit, relying on *United States v. Baggot*, 463 U.S. 476 (1983), vacated the District Court's January 26, 1983, disclosure order and instructed

respondent to return all grand jury materials previously disclosed. Respondent subsequently returned these materials to the Tax Division of the Department of Justice.

On April 15, 1983, respondent issued to petitioners a notice of deficiency on which he determined that petitioners had failed to pay tax on substantial amounts of income earned from the sale of the above-mentioned tax shelter program. Respondent further determined that all or part of the tax underpayment was due to fraud. On July 12, 1983, petitioner filed a petition disputing the income tax deficiencies and additions to tax for fraud set forth in the notice of deficiency. On October 21, 1983, respondent timely filed an answer denying petitioners' assignment of errors and affirmatively alleging that all or part of petitioners' underpayment of tax for the years in issue was due to fraud. Petitioners timely filed a reply denying respondent's affirmative allegations of fraud on December 19, 1983.

On May 21, 1984, petitioners received respondent's letter informally requesting that petitioners answer certain questions, produce certain documents, and stipulate certain facts relevant to the issues in dispute. Petitioners refused to cooperate with these informal discovery requests, claiming that the information requested was based on grand jury materials which the Ninth Circuit had ordered respondent to return.

On June 8, 1984, as a result of petitioners' failure to cooperate with respondent's informal discovery requests, respondent served on petitioners requests for admission pursuant to Rule 90, a request for production of documents pursuant to Rule 72 and interrogatories pursuant to Rule 71. Respondent also notified petitioners by letter that the discovery requests were not based on grand jury materials.

On July 30, 1984, having received no response to his formal discovery requests, respondent filed a motion to compel responses to respondent's interrogatories to petitioners and to compel the production of documents or to impose sanctions under Rule 104(c). On September 10, 1984, petitioners filed numerous objections in response to that motion. On September 11, 1984, petitioners filed a motion for a protective order requesting the Court to limit respondent's discovery to taxable year 1979 and served on respondent objections to the requests

for admission. However, because petitioners' response to the requests for admission was served on respondent more than 30 days after service of the requested admissions, the facts and exhibits set forth therein were deemed admitted on July 9, 1984, pursuant to Rule 90(c). *Freedson v. Commissioner*, 65 T.C. 333, 334–336 (1975), affd. 565 F.2d 954 (5th Cir. 1978).[2] The admitted facts and exhibits establish the following:

On April 2, 1973, petitioners executed a document entitled "Declaration of Trust of this Constitutional Trust" in the name of "Trust Publications." On the same date petitioners, as trustees of Trust Publications, also executed "Trustees' Declaration of Purpose of this Constitutional Covenant."

During 1977, 1978, and 1979, petitioner promoted and sold a tax shelter program he had devised utilizing foreign trust organizations. Sales of the program took the form of sales of memberships in an organization that petitioner had formed called the American Law Association (ALA). Purchasers of membership were entitled to receive instruction and materials relating to the tax shelter program at seminars conducted by the ALA. Members attending these seminars were charged fees ranging from $6,000 to $12,000.

During 1977, petitioner had signatory authority on bank accounts in the name of Trust Publications at the Citizen's State Bank, Bryan, Texas and the First Bank of Snook, Snook, Texas. Fees totaling $244,372.10 from the sale of ALA membership were deposited in these accounts during 1977.

During 1978, in addition to the bank accounts identified above, petitioner had signatory authority on bank accounts in the name of Trust Publications at the University National Bank in Bryan, Texas. Membership fees totaling $483,757.62 were deposited in these accounts during 1978.

During 1979, membership fees of $938,221.39 were deposited in the bank accounts in the name of Trust Publications at the First Bank of Snook and the University National Bank.

From 1978 through 1980, amounts totaling $1,063,100 were transferred from the bank accounts in the name of Trust Publications at the Bank of Snook and the University Nation-

---

[2]In *Freedson v. Commissioner*, 65 T.C. 333, 335–336 (1975), affd. 565 F.2d 954 (5th Cir. 1978), we held that "Rule 90 of the Rules of this Court contemplates that a party's failure to respond to a request will result automatically in the admission of the statements in the request without the necessity of a confirming order." Accordingly, no confirming order has been made in this case.

al Bank to two bank accounts in the names of International Clearing House and Information Services International, respectively. Petitioner had signatory authority on both accounts. During this same period, amounts totaling $1,063,000 were subsequently transferred from the bank accounts in the name of International Clearing House and Information Services International to eight numbered bank accounts in the name of Val International of which petitioner possessed signatory authority. Amounts totaling $863,000 were then transferred from the Val International Accounts to three bank accounts in the names of Lark Enterprises, Yellow Rose Properties, and Southern Utilities on which petitioner also possessed signatory authority. The remaining $200,000 in the Val International accounts was used to purchase a certificate of deposit in the name of "Val International Account #8."

For fiscal years ended March 31, 1977, March 31, 1978, March 31, 1979, and March 31, 1980, petitioner filed Forms 1041 (U.S. Fiduciary Income Tax Return) in the name of Trust Publications on which he reported as gross profit the membership fees deposited in the Trust Publications bank accounts. On the 1978, 1979, and 1980 returns, petitioner deducted royalty payments totaling $1,153,100. A substantial portion of these royalty payments consisted of amounts transferred from the Trust Publications bank accounts to the bank accounts in the name of International Clearing House and Information Services International. Petitioner also claimed deductions totaling $59,243.45 for the trustee fees he received.

On their 1977, 1978, and 1979 Federal income tax returns, petitioners reported as income the trustee fees petitioner received from Trust Publications. Petitioners did not report as income the membership fees deposited in the Trust Publications bank accounts.

In the notice of deficiency, respondent determined that Trust Publications was a sham entity having no substance, purpose, or economic reality other than as a vehicle to evade the payment of Federal income taxes. Respondent therefore determined that petitioners are taxable on the membership fees deposited in the Trust Publications bank accounts. Respondent also determined that all or part of the underpayment of tax required to be shown on petitioners' Federal income tax returns for the years in issue was due to fraud.

In their petition filed on July 12, 1983, petitioners disputed respondent's deficiency determination and additions to tax, contending that Trust Publications was not a sham entity, but rather was a valid domestic business trust which was properly taxable on the fees earned from the sale of ALA memberships.

On July 30, 1984, respondent filed a motion for summary judgment based on the facts deemed admitted under Rule 90(c). Petitioners have raised numerous objections to respondent's motion, including an assertion that the facts deemed admitted under Rule 90(c) were based on grand jury materials which the Ninth Circuit had previously ordered respondent to return.

On September 12, 1984, petitioners filed a motion to withdraw admissions and a motion for extension of time to answer requests for admission.

On October 22, 1984, this case was called from the trial calendar of the Court's session at Houston, Texas, and subsequently recalled on October 29, 1984, for hearing on certain motions. Both parties appeared at the hearing and introduced into evidence various documents and affidavits. Petitioners also submitted "answers" to respondent's interrogatories and requests for production of documents consisting of the same objections previously filed by petitioners on September 10, 1984.

By order dated October 29, 1984, we took under advisement petitioners' motion for extension of time to answer requests for admission and petitioners' motion to withdraw admissions. We further ordered that respondent's motion for summary judgment, respondent's motion to compel responses to respondent's interrogatories to petitioners and to compel production of documents or to impose sanctions under Rule 104(c), and petitioners' motion for a protective order were held in abeyance pending further direction of the Court. We now proceed to rule on these motions.

## Motion for Extension of Time

Under Rule 90(c), each request for admission is deemed admitted unless an answer is served on the requesting party "within 30 days after service of the request." The Court, in its discretion, may allow a party more than 30 days to respond under Rule 90(c). However, a motion to extend the time to file

responses must be made prior to the expiration of 30 days following service of the requests. *Morrison v. Commissioner*, 81 T.C. 644, 646–647 (1983). If no motion is filed within this time period, each request is deemed admitted. *Morrison v. Commissioner, supra* at 647.

In the instant case, respondent's requests for admission were served on petitioners on June 8, 1984. Each request contained therein was therefore deemed admitted on July 9, 1984. Rule 90(c); *Freedson v. Commissioner*, 65 T.C. 333, 334–336 (1975), affd. 565 F.2d 954 (5th Cir. 1978). Consequently, petitioners' motion for extension of time to answer requests for admission filed on September 12, 1984, is untimely and is denied.

### Motion To Withdraw Admissions

Under Rule 90(e), an admission may be withdrawn or modified (1) if the withdrawal or modification would subserve the presentation of the merits of the case, and (2) if the party obtaining the admission "fails to satisfy the Court that the withdrawal or modification will prejudice him in prosecuting his case or defense on the merits."

With respect to the first criterion, we do not believe that the withdrawal of the admissions would subserve the presentation of the merits of the case. Petitioners do not object to the accuracy of the admissions establishing the amount of fees received from the sale of ALA memberships and the various trust accounts to which these fees were transferred. Rather, petitioners contest respondent's determination that the various trusts were sham. As discussed *infra*, we have found that the deemed admissions, standing alone, are insufficient to sustain a summary adjudication that petitioners engaged in sham transactions during the years in issue. Petitioners will therefore be given the opportunity to fully litigate respondent's sham argument at trial, even if the admissions are not withdrawn. Consequently, because petitioners have not objected to the accuracy of the facts deemed admitted under Rule 90(c), we do not believe that the withdrawal of the admissions would subserve the presentation of petitioners' case.

Even assuming that petitioners would contest the admitted facts at trial, we would nevertheless deny petitioners' motion, because respondent has satisfied the Court that the withdrawal of the admissions will prejudice him in prosecuting the

merits of his case for the following reasons. In *Morrison v. Commissioner, supra* at 649, we stated that "A party will be prejudiced by the withdrawal of admissions if he has relied on them and will suffer delay, added expense, and additional effort because of the withdrawal."

In the instant case, respondent has relied in good faith on the binding effect of the deemed admissions to prepare his motion for summary judgment. Petitioners made no suggestion prior to the time respondent filed his motion for summary judgment that they intended to file a motion to withdraw the deemed admissions. Indeed, petitioners filed their motion to withdraw admissions more than 2 months after respondent's requests were deemed admitted and more than 1 month after respondent filed his motion for summary judgment. Thus, because respondent reasonably relied on petitioners' failure to reply or object to the requested admissions, withdrawal of the deemed admissions would result in an unfair waste of respondent's work on the motion. *Morrison v. Commissioner, supra.*

In addition to having reasonably relied on the deemed admissions, respondent will suffer delay, added expense, and additional effort if he is required to again prove at trial the matters contained in the admissions. The facts deemed admitted establish the amount of proceeds received from the sale of petitioner's tax shelter program and the various bank accounts to which these proceeds were deposited. To prove these facts at trial will require the additional expense and effort of subpoenaing, copying, scheduling, and analyzing numerous bank records. Further, respondent will be forced to identify, locate, and subpoena the purchasers of petitioner's tax shelter program.

The withdrawal of the admissions will also cause further delay in the disposition of this case. Petitioners have repeatedly responded to respondent's discovery requests with frivolous objections and numerous spurious motions. We believe that petitioners will continue to pursue these dilatory tactics if respondent is required to again prove at trial the matters contained in the admissions. Thus, as we found in *Morrison v. Commissioner, supra* at 650, when "we weigh our interest in diligence of litigation and the prejudice to respondent against petitioners' desire for a trial on the merits, the scales fall far on the side of respondent."

Petitioners nevertheless argue that we should grant their motion to withdraw admissions because respondent's requests for admission were based on grand jury materials which the Ninth Circuit ordered respondent to return. Respondent disagrees, contending that the requests for admission were not based on any grand jury materials. Alternatively, respondent argues that even if he had relied on grand jury materials during the period the rule 6(e) order was in effect, such reliance would have been appropriate under *Kluger v. Commissioner*, 83 T.C. 309 (1984). Because we agree that respondent did not rely on grand jury materials to draft his requests for admission, we need not and do not decide whether respondent's reliance on the grand jury materials would have been appropriate in this case.

To support his contention that the requests for admission were not based on grand jury materials, respondent introduced the affidavit of David Johnson (Johnson), the attorney who drafted the requested admissions. In his affidavit, Johnson stated under oath that "No evidence cloaked with grand jury secrecy or grand jury evidence disseminated pursuant to [the rule 6(e) order] was used in drafting * * * Respondent's Request for Admissions." Johnson also prepared and respondent submitted a schedule listing the non-grand-jury sources of each fact and exhibit contained in respondent's requests for admission. Petitioners made no submissions contesting Johnson's statements made under oath or Johnson's representation as to the non-grand-jury source of the facts and exhibits contained in the requests for admission. We are therefore satisfied that respondent did not rely on grand jury materials to draft his requests for admission. Accordingly, petitioners' motion to withdraw admissions is denied.

### Motion for Summary Judgment.

Under Rule 121, a summary adjudication may be made "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). The party opposing the motion cannot rest upon the allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue

for trial." Rule 121(d). The moving party, however, bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner*, 78 T.C. 412, 416 (1982).

Respondent contends that all relevant facts have been admitted under Rule 90(c) and are sufficient to establish that petitioner "engaged in an elaborate deceptive scheme using numerous nominee trust bank accounts to conceal large amounts of income on which he evaded payment of the income tax due thereon." We cannot agree that petitioners are to be thus foreclosed from offering at a subsequent trial additional evidence they may deem sufficient to place the admitted facts in a different light, although they will not, of course, be permitted to attempt to impeach the facts they have already admitted.

The facts deemed admitted under Rule 90(c) establish the amount of fees received from the sale of ALA memberships and the various trust accounts into which these fees were deposited. The record, however, contains no additional evidence supporting respondent's contention that these trusts were sham or that petitioner engaged in transactions with these trusts to conceal large amounts of income. Indeed, if anything, the record establishes that petitioner accurately and fully disclosed all fees earned from the sale of ALA memberships on the Forms 1041 filed in the name of Trust Publications. Thus, because respondent fails to point to any admitted facts which without further evidence establish that the trusts, and petitioner's transactions involving the trusts, were sham, we must deny respondent's motion for summary judgment.

Respondent maintains, however, that petitioners are deemed to have admitted under Rule 90(c) "There are due from the petitioners the deficiencies in income tax and additions to tax as determined by respondent." While we have held in a different context that undenied allegations of fact stated in conclusory language will support imposition of the addition to tax for fraud under section 6653(b), the undenied conclusory allegations were preceded and supported by undenied allegations of specific facts which were consistent with the conclusory allegations of fraud. See *Doncaster v. Commis-*

*sioner*, 77 T.C. 334, 337 (1981). To the contrary, as we have pointed out here, the admitted detailed facts do not, standing alone, support respondent's sham theory, and petitioners (who nevertheless have the burden of proof under Rule 142(a)) will have the opportunity at trial to introduce further evidence to disprove the sham allegations.[3] Since the admitted facts do not alone establish sham, they do not in and of themselves support the conclusory facts upon which respondent also relies for summary judgment. For the purposes of these motions we therefore relieve petitioners of the effect of the deemed admission that "there are due from the petitioners the deficiencies in income tax and additions to tax as determined by respondent." This specific request for admissions will be deemed denied.

### Motion To Compel Responses to Respondent's Interrogatories to Petitioners and To Compel the Production of Documents or To Impose Sanctions Under Rule 104(c)

Under Rule 71, "Any party may, without leave of Court, serve upon any other party written interrogatories to be answered by the party served." Rule 72 provides:

(a) Scope: Any party may, without leave of Court, serve on any other party a request to:

(1) Produce and permit the party making the request * * * to inspect and copy, any designated documents * * * to the extent that [they] * * * are in the possession, custody or control of the party on whom the request is served;

* * *

Petitioners do not contend that respondent's discovery requests deal with items not in their possession, custody, or control. Rather, petitioners' principal objection to these requests is that they are based on grand jury materials which the Ninth Circuit ordered respondent to return. The record, however, does not support petitioners' contention.

---

[3]In *Falsetti v. Commissioner*, 85 T.C. 332, 347 (1985), we defined "sham in substance" as "the expedient of drawing up papers to characterize transactions contrary to objective economic realities and which have no economic significance beyond expected tax benefits." Thus, at the trial of this case, petitioners will be given the opportunity to prove that the transactions were consistent with the objective economic realities or had economic significance beyond the expected tax benefits.

David Johnson, in addition to drafting respondent's requests for admission as previously discussed, also drafted respondent's interrogatories to petitioners and respondent's request for production of documents. Johnson stated in affidavit under oath that "No evidence cloaked with grand jury secrecy or grand jury evidence disseminated pursuant to [the rule 6(e) order] was used in drafting * * * Respondent's Request for Production of Documents, the Respondent's Interrogatories to Petitioners." Johnson also prepared a schedule listing the non-grand-jury sources of information and evidence used to draft the request for production of documents and interrogatories to petitioners. Petitioners made no submissions contesting Johnson's statements made under oath to Johnson's representation as to the source of the information contained in the request for production of documents or the interrogatories. We therefore are satisfied that respondent did not rely on grand jury materials to draft his request for production of documents or his interrogatories to petitioners.

We have considered petitioners' other objections and find them equally unpersuasive. Accordingly, respondent's motion to compel responses to respondent's interrogatories to petitioners and to compel production of documents or to impose sanctions under Rule 104(c) is granted. Petitioners will be required to respond fully and completely within the time limitations provided in the accompanying orders.

*Petitioners' Motion for a Protective Order*

On September 11, 1984, petitioners filed a motion for a protective order requesting the Court to limit respondent's discovery to taxable year 1979. To support their motion, petitioners principally argue that (1) respondent's discovery requests were for the purpose of annoyance, embarrassment, oppression, and undue burden of expense, and (2) the statute of limitations has expired for taxable years 1977 and 1978.

With respect to the first contention, petitioners offered no evidence that respondent's discovery requests were for the purpose of annoyance, embarrassment, oppression, or undue burden or expense. Indeed, we find respondent's discovery requests very relevant to the issues in dispute. Moreover, respondent has requested information which is in petitioners'

possession, custody, or control and can be obtained with no undue burden or expense.

We are also unpersuaded by petitioners' contention that the statute of limitations has run on taxable years 1977 and 1978. Under section 6501(c)(1), the statute of limitations does not run on a fraudulent return. Respondent has alleged in the notice of deficiency and answer to petition that some part of the underpayment of tax for 1977 and 1978 was due to fraud. If we were to ultimately decide in favor of respondent on this issue, the statute of limitations would not have run on the tax deficiencies for 1977 and 1978. Consequently, taxable years 1977 and 1978 remain in issue at this time.

Accordingly, petitioners' motion for a protective order will be denied.

*Appropriate orders will be issued.*