T.C. Memo. 1995-552


UNITED STATES TAX COURT


LAKEWOOD ASSOCIATES, ROBERT G. MOORE, TAX MATTERS PARTNER,
Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24656-93.          Filed November 21, 1995.


<u>Douglas E. Kahle</u>, for petitioner.

<u>John C. McDougal</u>, for respondent.


MEMORANDUM OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This matter originally came before the Court on respondent's Motion for Judgment on the Pleadings filed pursuant to Rule 120(a).[1]  During

---

[1]  Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the year in issue.

the course of a hearing conducted in this case, the parties made certain factual representations to the Court going beyond the matters alleged in the pleadings. Consistent with Rule 120(b),[2] the Court advised the parties of its intention to treat respondent's motion as a Motion for Summary Judgment and directed the parties to file separate reports with the Court attaching thereto any exhibits, affidavits, or other documentation necessary to complete the record. See Rule 121(b) and (d). The parties having complied with the Court's order, respondent's Motion for Judgment on the Pleadings shall be treated herein as a Motion for Summary Judgment. See Francis v. Commissioner, T.C. Memo. 1988-30.

The issue for decision is whether respondent is entitled to a summary judgment denying Lakewood Associates' claim to a loss for 1989 related to a "taking" of certain real property.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be

---

[2] Rule 120(b) provides:

(b) **Matters Outside Pleadings:** If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and shall be disposed of as provided in Rule 121, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 121.

granted with respect to all or any part of the legal issues in controversy--

> if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *  [Rule 121(b).]

Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

The following is a summary of the relevant facts that do not appear to be in dispute; they are stated solely for purposes of deciding the pending motion and are not findings of fact for this case.  Fed. R. Civ. P. 52(a).

Background

Lakewood Associates (Lakewood or the partnership) is a general partnership subject to the unified partnership audit and litigation procedures set forth in sections 6221 through 6233. See Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648-667.  At all relevant times, Lakewood maintained its principal place of business at

Virginia Beach, Virginia.  Sec. 7482(b)(1)(E).  Robert G. Moore (petitioner) is Lakewood's tax matters partner.

Lakewood was formed in the State of Virginia on August 12, 1987.  During 1987, Lakewood acquired approximately  649 acres of unimproved real estate located in Chesapeake, Virginia.  Although Lakewood acquired the property with a view towards profiting from its development, efforts in this regard were halted when the Federal Government issued its Wetlands Manual of 1989 (Wetlands Manual).[3]  Under the Wetlands Manual, property falling within the definition of protected wetlands is subject to the jurisdiction of the Environmental Protection Agency and the United States Army Corps of Engineers (COE).[4]

As a consequence of the release of the Wetlands Manual, Lakewood engaged various environmental engineering consultants to prepare wetland evaluations and provide advice regarding the feasibility of developing the property.  After determining that approximately 75 percent of Lakewood's property constitutes protected wetlands as defined in the Wetlands Manual, the consultants advised Lakewood that, in accordance with the Wetlands Manual, a permit would have to be obtained from COE

_____

[3]  While not critical to the disposition of the pending motion, it appears that the 1989 Wetlands Manual was abandoned sometime in 1991 in favor of the readoption of the Wetlands Manual of 1987.

[4]  Prior to 1989, the property in question was not considered wetlands.

pursuant to the Clean Water Act, Pub. L. 95-217, sec. 404, 91 Stat. 1600 (see 33 U.S.C. sec. 1344 (1988)) prior to developing the property.

When asked to opine as to the likelihood that COE would grant Lakewood's application for a permit to develop the property, the consultants generally agreed that Lakewood would not be permitted to develop the land, and, in fact, COE probably would never formally act on Lakewood's application. The consultants' view in this regard is reflected in the following statement:

> Based on my review of the documentation, all the signals from [COE] indicate that the permit would not be issued, and it was not probable that Lakewood would get a permit. The more probable result would be that [COE] would require Lakewood to provide more and more studies of alternative sites, endangered species reconnaissance, and archeological surveys, until Lakewood finally gave up, due to the rising costs. It is my experience that this is the pattern in other cases in which a residential developer applies to [COE] for a permit to develop a large wetland area.

Based on this advice, Lakewood decided that it would not be economically feasible to attempt to develop the property.

Lakewood reported a loss of $9,849,682 in respect of the property on its 1989 partnership return. Respondent subsequently examined Lakewood's 1989 return and disallowed the loss in its entirety. Although an appraiser engaged by respondent to review the matter found it unlikely that the property could be developed in an economically feasible manner, respondent issued a notice of

final partnership administrative adjustment (FPAA) to Lakewood stating in pertinent part:

> Since it has not been established that a condemnation, involuntary conversion or a disposition based on a closed completed transaction occurred within the meaning of the Internal Revenue Code, no loss is allowable. In addition, it has not been established that the designation of your property as wetlands or the issuance of the wetlands manual and regulations deprived you of all economic use of the property. If, however, the issuance of the wetlands manual and regulations is ultimately determined to constitute a condemnation, an involuntary conversion, or other allowable loss; any such loss must be reduced by the partnership's right to reimbursement for such loss. Since you have not established that such reimbursement would not equal or exceed the partnership's basis in the property, no loss is allowable.

In response to the FPAA, petitioner invoked this Court's jurisdiction by filing a timely petition for readjustment of partnership items.

As indicated, the matter is presently pending before the Court on respondent's Motion for Summary Judgment. For purposes of the present motion only, respondent: (1) Admits all of the allegations of fact contained in the petition; and (2) concedes that the issuance of the Wetlands Manual so restricted Lakewood's ability to develop its property as to amount to a "taking" of the property within the meaning of sections 1231 and 165. Assuming there was such a taking, respondent maintains that she is entitled to judgment as a matter of law on the theory that Lakewood "had a co-extensive right to reimbursement from the Federal Government which would reduce to zero the amount of the

otherwise allowable loss in the year the loss occurred."
Petitioner filed a response and a supporting memorandum of law in opposition to respondent's motion.

Discussion

The issue for decision is whether, assuming the application of the Wetlands Manual effected a "taking" of Lakewood's property, respondent is entitled to summary judgment that Lakewood is nonetheless precluded from reporting a loss relating to such event on the ground that it possessed a claim for reimbursement from the Federal Government with respect to which there was a reasonable prospect of recovery.

Section 165(a) states the general rule that a deduction may be reported for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 1.165-1(d)(2)(i), Income Tax Regs., which concerns the year in which a loss deduction may be reported, provides:

> If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a

taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release.  [Emphasis added.]

In sum, section 1.165-1(d)(2)(i), Income Tax Regs., provides that a loss is not sustained, i.e., recognized, for purposes of section 165(a), if there exists a claim for reimbursement with respect to the loss for which there is a reasonable prospect of recovery, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received.

Respondent's Motion for Summary Judgment is premised on the theory that Lakewood was guaranteed full compensation for the loss resulting from the classification of its property as wetlands.  In particular, assuming the classification of Lakewood's property as wetlands constitutes a "taking" of the property, respondent contends that Lakewood is guaranteed to be compensated by the Federal Government pursuant to the Fifth Amendment to the U.S. Constitution which provides that "private property [shall not] be taken for public use, without just compensation."

Petitioner presents four alternative arguments in opposition to respondent's motion.  First, petitioner contends that, to the extent respondent's motion is based on an admission of all allegations of fact contained in the petition, respondent is

deemed to have conceded paragraph 8(l) of the petition which states:

> The possibility of recovery on a case brought before the United States Claims Court is speculative and the potential existence of a legal right to bring such a claim is not the equivalent of an insurance policy which serves to reduce the amount of otherwise deductible loss which has been incurred by the Partnership.

As petitioner sees it, an admission of this paragraph is contrary to respondent's argument that Lakewood had a guaranteed right of reimbursement from the Federal Government.

Petitioner's second argument is that respondent's motion should be denied on the ground that the question of whether Lakewood enjoyed a reasonable prospect of recovery against the Federal Government is a question of fact as opposed to a question of law. Specifically, petitioner cites the portion of section 1.165-1(d)(2)(i), Income Tax Regs., that provides that whether a taxpayer has a reasonable prospect of recovery with respect to an event causing a potential loss is a question of fact to be determined upon an examination of all the facts and circumstances.

Petitioner's third argument is based on this Court's decision in Hills v. Commissioner, 76 T.C. 484 (1981), affd. 691 F.2d 997 (11th Cir. 1982). In Hills, we allowed the taxpayers to claim a theft loss of $660, notwithstanding that the taxpayers had an insurance policy that would otherwise have covered the

loss, where the taxpayers decided not to file a claim with the insurance company for fear that the policy would not be renewed. Relying on the reasoning underlying our decision in Hills, petitioner contends that Lakewood is not required to seek a judicial remedy as a prerequisite to recognizing the loss in question.

Finally, petitioner maintains that respondent's motion should be denied on the ground that Lakewood's prospects of recovery against the Federal Government are speculative at best. In short, petitioner asserts that Lakewood would have to apply to COE for a permit to develop the regulated wetlands and have that application denied before being permitted to commence an action in the U.S. Court of Federal Claims. Petitioner further contends that he is prepared to prove at trial that, based upon current COE practices, Lakewood's permit application might never be formally denied, thus denying Lakewood access to the Court of Federal Claims.

Based upon our review of the pleadings and the other materials making up the record in the case, and having fully considered the parties respective positions, we are persuaded that respondent's Motion for Summary Judgment should be denied. Section 1.165-1(d)(2)(i), Income Tax Regs., provides that when an event occurs that may result in a loss, yet there exists a claim for reimbursement on the loss with respect to which there is a

reasonable prospect of recovery, no loss may be reported until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Section 1.165-1(d)(2)(i), Income Tax Regs., further provides that whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances.

Respondent argues that, assuming Lakewood suffered a "taking" in this case, Lakewood necessarily possessed a "reasonable prospect of recovery" as contemplated under section 1.165-1(d)(2)(i), Income Tax Regs. Relying on affidavits executed by Lakewood's environmental engineering consultants, petitioner counters that, by virtue of COE's method of operation, there is a genuine issue of fact whether Lakewood's property was taken in such a manner as to eliminate any reasonable prospect of recovery.

While there is a certain allure in the fundamental logic underlying respondent's argument, on the whole we find respondent's position to be overly simplistic. It is beyond peradventure that the Federal Government is obliged to provide just compensation where private property is taken within the meaning of Fifth Amendment. See, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992). Nevertheless, respondent's abstract concession that Lakewood suffered a

compensable "taking" does not ensure or confirm that Lakewood will in fact secure such a remedy given the administrative realities of wetlands regulation.  In light of petitioner's allegations concerning COE's administrative practices, we conclude that a genuine issue as to a material fact remains in dispute with regard to Lakewood's prospects for a recovery.[5]  For these reasons, we conclude that the question of whether Lakewood sustained a loss within the meaning of section 165(a) in this case is not ripe for disposition by summary judgment.

To reflect the foregoing,

<u>An order denying respondent's Motion for Summary Judgement will be issued</u>.

---

[5]  Because this matter is before us on respondent's motion for summary judgment, the inferences that we draw from the underlying facts are viewed in the light most favorable to petitioner, the party opposing the motion.  <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985).