152 T.C. No. 4

UNITED STATES TAX COURT

PALMOLIVE BUILDING INVESTORS, LLC, DK PALMOLIVE BUILDING
INVESTORS PARTICIPANTS, LLC, TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23444-14.                              Filed February 28, 2019.

P filed for 2004 a Form 1065, U.S. Return of Partnership
Income. On that return it claimed a $33.41 million charitable
contribution deduction for the contribution of a facade easement. The
IRS examined the return. The examining agent decided to disallow
the deduction and to assert two penalties in the alternative--a 40%
penalty for gross valuation misstatement under I.R.C. sec. 6662(h)
and a 20% underpayment penalty due to negligence under I.R.C. sec.
6662(b)(1). The agent proposed these adjustments on Forms 886A,
Explanation of Items, attached to a Form 5701, Notice of Proposed
Adjustment. The agent's immediate supervisor signed the
Form 5701. The deduction disallowance and the gross valuation
misstatement penalty were later proposed to P in a "30-day letter",
and the disallowance and both penalties were thereafter proposed to P
in a "60-day letter".

P requested a conference with the IRS Office of Appeals. An
Appeals officer proposed the issuance of a notice of final partnership
administrative adjustment (FPAA) by means of a Form 5402-c,

Appeals Transmittal and Case Memo, to which he attached a Form 886A that asserted four alternative penalties--the two initially determined by the examining agent and also penalties for substantial understatement of income tax under I.R.C. sec. 6662(b)(2) and for substantial valuation misstatement under I.R.C. sec. 6662(b)(3). The Appeals officer's immediate supervisor signed the Form 5402-c (on the "Approved by" line), and six weeks later an FPAA was issued to P disallowing the charitable contribution deduction and determining all four penalties.

P timely filed a petition challenging the FPAA. This Court issued an opinion, Palmolive Bldg. Inv'rs, LLC v. Commissioner, 149 T.C. 380 (2017), sustaining the disallowance of the deduction. P filed a motion for summary judgment, and R filed a cross-motion for partial summary judgment, concerning, inter alia, whether the IRS complied with I.R.C. sec. 6751(b)(1) in determining the penalties.

Held: Where the IRS asserts multiple penalties, I.R.C. sec. 6751(b)(1) does not require that the "initial determination" of all the penalties be made at the same time or by the same individual.

Held, further, I.R.C. sec. 6751(b)(1) does not require supervisory approval to be made on a particular form, and the statute is satisfied by approval made on Form 5701 or Form 5402-c, with the subordinate's "initial determination[s]" of penalty attached thereto.

Andrew R. Roberson and Roger J. Jones, for petitioner.

David A. Lee, Thomas F. Harriman, Elizabeth Y. Ireland, Kathryn F. Patterson, Steven R. Guest, and Naseem J. Khan, for respondent.

OPINION

GUSTAFSON, Judge: On July 28, 2014, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") for the taxable year ending December 31, 2004, to DK Palmolive Building Investors Participants, LLC, the tax matters partner ("TMP") for Palmolive Building Investors, LLC ("Palmolive"). This case is a TEFRA partnership-level action based on a petition filed by the TMP pursuant to section 6226.[1] At issue is (1) Palmolive's entitlement to a charitable contribution deduction for its donation of a facade easement and (2) its liability for penalties. As to the charitable contribution deduction, we previously issued an Opinion in this case, Palmolive Bldg. Inv'rs, LLC v. Commissioner ("Palmolive I"), 149 T.C. 380 (2017), granting partial summary judgment in favor of the Commissioner and holding that Palmolive is not entitled to the deduction because of its failure to comply with certain requirements of section 170. Palmolive's liability for penalties is still at issue.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.; "I.R.C."), as amended and in effect for the relevant year, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Now before the Court are a motion for summary judgment filed by Palmolive and a cross-motion for partial summary judgment filed by the Commissioner, both of which address the question whether the IRS obtained written supervisory approval of the initial determination of the penalties at issue here, in compliance with section 6751(b). For the reasons explained below, we will deny Palmolive's motion and grant the Commissioner's cross-motion.

## Background

Some of the factual background of this case is stated in Palmolive I. There is no genuine dispute about the facts relevant to the section 6751(b) issue, which are derived from the parties' motions, the declarations and exhibits they submitted in support of those motions, and their stipulation of facts filed November 23, 2018. The facts are as follows.

### The property and the charitable donation

Palmolive owns the Palmolive Building on North Michigan Avenue in Chicago, Illinois (the "building"), which it acquired for approximately $58.5 million in May 2001. On December 21, 2004, Palmolive executed a conservation easement deed ("the deed") in favor of the Landmarks Preservation Council of Illinois ("LPCI"), a qualified organization within the meaning of section 170(h)(3). The stated purpose of the deed is to preserve the exterior perimeter

walls of the building's facade. The deed obligates Palmolive and any subsequent owner of the building to maintain the facade in perpetuity.

The mortgages and their "subordination"

At the time of the execution of the deed, two mortgages encumbered the building.[2] Both of these mortgages obliged Palmolive to maintain insurance on the entire property (including the facade) and granted to the mortgagees Palmolive's right to insurance proceeds. Before executing the deed, Palmolive secured agreements from both lenders that ostensibly subordinated their respective mortgages on the property to LPCI's rights to enforce the purposes of the easement.

However, as we later held in Palmolive I, neither mortgage was fully subordinated to the conservation easement, and LPCI was not guaranteed to receive the requisite share of proceeds in the event that the easement was extinguished. See Palmolive I, 149 T.C. at 394-404.

_____

[2]One of these two mortgages was held by Corus Bank, N.A., and the other was held by the National Electrical Benefit Fund. The parties have recently stipulated that, at the time of the donation, there was a third mortgage, held by Column Financial, Inc., that was not considered in Palmolive I. Further discussion of this third mortgage is unnecessary for the purposes of this Opinion.

Tax return

Palmolive asserts that at the time of the donation of the easement in 2004, the total value of the property was $257 million, of which 13%--i.e., $33.41 million--was attributable to the easement. On its Form 1065 ("U.S. Return of Partnership Income") for 2004, Palmolive claimed a charitable contribution deduction of $33.41 million for the facade easement contribution.

The IRS's examination

Internal Revenue Agent Patrick Wozek examined Palmolive's 2004 return. He concluded that, for multiple reasons, the facade easement contribution deduction should be disallowed and that penalties should be imposed.[3]

As to the proposed penalties, on or before July 30, 2008, Agent Wozek prepared a Form 5701 ("Notice of Proposed Adjustment") with the caption "Accuracy Related Penalty (Gross Valuation Misstatements)". Under "Reasons

_____

[3]Eventually four penalties were determined: (1) for negligence, sec. 6662(b)(1); (2) for substantial understatement of income tax, sec. 6662(b)(2); (3) for substantial valuation misstatement, sec. 6662(b)(3); and (4) for gross valuation misstatement, sec. 6662(h)(1). We include, in the following discussion, detail about how and when they were initially determined by IRS personnel-- negligence and gross valuation misstatement by Agent Wozek, and substantial understatement and substantial valuation misstatement by personnel in the Office of Appeals.

for Proposed Adjustment", the form states: "Estimated Flowthrough[4] Penalty (See F886A)." To the Form 5701 Agent Wozek attached a three-page Form 886A ("Explanation of Items") that proposed and justified a penalty for gross valuation misstatement under section 6662(h)(1), and an additional two-page Form 886A, with a heading titled "Alternative Position on Penalty", that proposed and justified a negligence penalty under section 6662(b)(1). The documents thus proposed two alternative penalties.[5] Agent Wozek did not sign the documents. He gave the Form 5701 and its attachments to his immediate supervisor, Michael Lynch, and Mr. Lynch signed it on July 30, 2008.

---

[4]The evident significance of the word "flowthrough" is that Palmolive was a partnership, whose partners rather than itself were liable for income tax, so that penalty liability asserted in any FPAA issued to Palmolive would flow through to the partners.

[5]The Commissioner seems to contend that a determination of a 40% penalty for gross valuation misstatement (applicable where a value claimed on a tax return exceeds the actual value by 400%) necessarily includes a determination of a 20% penalty for a substantial valuation misstatement (applicable where a value claimed on a tax return exceeds the actual value by 200%), i.e., a lesser included offense. Palmolive disagrees, and we need not resolve this dispute. If the 20% penalty was implicitly included in Agent Wozek's initial determination, then it was approved by his immediate supervisor. If it was not, then it was (as we assume here, and as is discussed below at page 10) initially determined by Appeals Officer Trevor Holliday and approved by his immediate supervisor.

30-day letter

On October 9, 2008, Mr. Lynch sent to Palmolive a "30-day letter" (Letter 1807), inviting Palmolive to attend, within 30 days, a "closing conference" to discuss the proposed adjustments. Attached to the letter was a Form 4605-A ("Examination Changes * * *"), which bore Agent Wozek's name and included the statement: "The gross valuation misstatement penalty per IRC 6662(h) is applicable * * *. See F886A-2". Also attached to the 30-day letter was the Form 886A justifying the penalty for gross valuation misstatement but not the other Form 886A justifying the negligence penalty. Thus, the 30-day letter did not assert the negligence penalty. Palmolive participated in a closing conference with the examination personnel, and those personnel proceeded with their determinations.

60-day letter

On May 11, 2009, the IRS sent to Palmolive a "60-day letter" (Letter 1827), proposing adjustments to its partnership return and giving Palmolive 60 days within which to file a protest and request a conference before the IRS Office of Appeals ("Appeals"). Attached to the 60-day letter was a Form 870-PT ("Agreement for Partnership Items * * *"), which contained a summary of the proposed adjustments to Palmolive's return. The "Remarks" on Form 870-PT's

"Schedule of Adjustments" stated: "In addition, the penalty for gross valuation misstatement penalty under IRC section 6662(h) shall apply with respect to the full amount of the adjustment to charitable contributions." This remark did not mention the negligence penalty. However, also attached to the 60-day letter was the Form 5701 signed by Mr. Lynch, with its two Forms 886A--one justifying the penalty for gross valuation misstatement and the other justifying the negligence penalty. In response to the 60-day letter, Palmolive submitted a protest and requested a conference before Appeals.

Consideration by Appeals

While the case was under consideration in Appeals, Appeals Officer Trevor Holliday concluded that additional alternative penalties should be imposed. Sometime on or before June 13, 2014, he prepared and, on that date, signed a Form 5402-c ("Appeals Transmittal and Case Memo"), to which he attached a proposed FPAA, on the last page of which (a Form 886A) the penalties were described as follows:

> (2)     Accuracy Penalty
> Any underpayments of tax resulting from the adjustments and determinations above for the tax year ended December 31, 2004, are subject to the following accuracy related penalties imposed by I.R.C. section 6662:
>
> A 40% penalty for gross valuation misstatement under I.R.C. section 6662(a) and (h);

Or, in the alternative,

A 20% penalty due to negligence or intentional disregard of the rules and regulations, substantial understatement of tax, or a substantial valuation misstatement under I.R.C. section 6662(a) and 6662(b)(1), 6662(b)(2), or 6662(b)(3).

Thus, the proposed FPAA determined all four penalties at issue here.

Appeals Officer Holliday gave the Form 5402-c and its attachments to his immediate supervisor, Darren Lee; and on June 13, 2014, Mr. Lee signed both the Form 5402-c (on a signature line preceded by the phrase "Approved by") and the proposed FPAA. The Form 5702-c indicated that the FPAA was to be issued by a unit within the IRS referred to as "OSC-CTF" and that the proposed FPAA was "transmitted electronically to CTF-OSC on 6/16/2014".

FPAA and petition

The IRS issued the FPAA on July 28, 2014. In it the IRS determined that Palmolive did not adequately substantiate the value of the contribution and that the deed did not meet the requirements of section 170. In the alternative, the IRS asserted that even if the contribution of the easement met those requirements, Palmolive did not establish that the easement had a value of $33,410,000. The FPAA asserted the four penalties that had been on Appeals Officer Holliday's proposal.

On October 1, 2014, Palmolive's petition was timely filed in this Court. At the time Palmolive filed its petition, Palmolive's principal place of business was in Illinois.

## Discussion

### I. General principles

#### A. Summary judgment

Where the material facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). A partial summary adjudication is appropriate if some but not all issues in the case can be disposed of summarily. See Rule 121(b); Turner Broad. Sys., Inc. v. Commissioner, 111 T.C. 315, 323-324 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences are to be drawn in the manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

The parties' cross-motions both request summary judgment on the section 6751(b) issue; and since we will grant the Commissioner's motion for partial summary judgment, we draw factual inferences in favor of Palmolive.

However, under Rule 121(d), "opposing affidavits * * * shall set forth such facts as would be admissible in evidence"; and "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response * * * must set forth specific facts showing that there is a genuine dispute for trial."

B.     Written supervisory approval of initial determinations of penalties

Section 6751(b)(1) provides:

> No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination * * * .

Congress's purpose in enacting section 6751(b)(1) was to help ensure "that penalties [w]ould only be imposed where appropriate and not as a bargaining chip." Chai v. Commissioner, 851 F.3d 190, 219 (2d Cir. 2017) (quoting S. Rept. No. 105-174, at 65 (1998), 1988-3 C.B. 537, 601), aff'g in part, rev'g in part T.C. Memo. 2015-42.

The issue whether the IRS complied with section 6751(b)(1) may be appropriately considered in a deficiency case premised on a notice of deficiency, see Graev v. Commissioner, 149 T.C. ___ (Dec. 20, 2017), supplementing and overruling in part 147 T.C. 460 (2016), and in a TEFRA partnership case premised on an FPAA, such as this one, when a petitioner's pleadings affirmatively raise the

issue as a defense, see Endeavor Partners Fund v. Commissioner, T.C. Memo. 2018-96, at \*63-\*64, appeal filed (D.C. Cir. Oct. 1, 2018). To comply with section 6751(b), the Commissioner must secure written supervisory approval for the penalty before issuing an FPAA to the partnership. Id. at \*63 (citing Chai v. Commissioner, 851 F.3d at 221-222). The parties agree that the penalties at issue here are subject to the requirements of section 6751(b)(1).

## II. Analysis

### A. Penalty approvals

#### 1. "[I]nitial determination"

Under section 6751(b)(1), it is the "initial determination" that must be approved. (Emphasis added.) The parties have stipulated the identities of the two IRS employees who made the penalty determinations that the Commissioner relies on here--i.e., Agent Wozek (who in July 2008 "determined" the gross valuation misstatement penalty and, in the alternative, the negligence penalty) and Appeals Officer Holliday (who in June 2014 "determined" the alternative gross valuation misstatement penalty and negligence penalty). Palmolive does not allege any act or document that could constitute a determination made before those determinations.

Nor does Palmolive allege that any penalty determination was communicated to Palmolive before the approvals of those determinations. Rather: (1) The gross valuation misstatement penalty was communicated in the 30-day letter sent in October 2008--i.e., <u>after</u> it had been approved by Mr. Lynch on Form 5701 in July 2008. (2) The negligence penalty (along with the gross valuation penalty) was communicated in the 60-day letter sent in May 2009--i.e., <u>after</u> it had been approved by Mr. Lynch in July 2008. And (3) the substantial valuation misstatement penalty and the substantial understatement penalty (along with gross valuation and negligence) were communicated in the FPAA sent in July 2014--i.e., <u>after</u> they had been approved by Mr. Lee on Form 5402-c in June 2014.

Thus, on the undisputed facts, we hold that the "initial determinations" are those by Agent Wozek on or before July 2008 and by Appeals Officer Holliday in June 2014.

### 2. "[P]ersonally approved (in writing)"

The parties have stipulated the identities of the pertinent immediate supervisors--i.e., Mr. Lynch for Agent Wozek and Mr. Lee for Appeals Officer Holliday. Palmolive has not explicitly stipulated--but does not dispute--the authenticity of the two documents that the Commissioner contends reflect the

necessary approvals, i.e., Mr. Lynch's Form 5701 in July 2008 (approving the gross valuation misstatement penalty and, in the alternative, the negligence penalty) and Mr. Lee's Form 5402-c (approving two additional alternatives--the substantial understatement penalty and the substantial valuation misstatement penalty).

Thus, the undisputed facts show that each of the four penalties at issue in this case was initially determined by an individual who obtained his supervisor's written approval before the penalty determination was communicated to Palmolive.

B.    Palmolive's contentions

There is no merit to the contrary contentions that Palmolive makes.

1.    Multiple determinations and approvals

Palmolive observes that Agent Wozek did not determine and Mr. Lynch did not approve the latter two penalties (substantial valuation misstatement and substantial understatement) in July 2008. This is true, but it is beside the point. The undisputed facts show that those two penalties were first determined by Appeals Officer Holliday and approved by Mr. Lynch in June 2014 and that those two penalties were not communicated to Palmolive until after that approval.

Section 6751(b)(1) includes no requirement that all potential penalties be initially determined by the same individual nor at the same time.

2.      Specific procedures

Palmolive urges that the IRS's failure to comply with its own internal instructions in the Internal Revenue Manual makes the penalty determinations and approvals invalid:

> Respondent's position in this case conflicts with his own administrative practice. Int. Rev. Man. 20.1.5.1.4 (3) (12- 13-2016) provides that the sec. 6751(b) "approval must be documented in the workpapers." See also Int. Rev. Man. 20.1.5.1.4.1 - Documenting Managerial Approval of Penalties (12-13-2016) ("The employee initially proposing the penalty should indicate the name of the penalty, the IRC section and the amount of the penalty on Form 4318-OA, Examination Workpapers Index, Form 4318, Examination Workpapers Index, Form 4700, Examination Workpapers, or Form 5772, EP/EO Workpaper Summary."); Int. Rev. Man. 20.1.1.2.3 - Managerial Approval for Penalty Assessments (11-21-2017) ("The approval, in writing, of the initial determination that is made by the immediate supervisor of the individual who made the initial determination must be documented and retained in the case file. The immediate supervisor must indicate the decision reached, sign, and date the case history document."). Respondent has not provided any workpapers or other documents from the case file documenting any initial determination of penalties by Messrs. Wozek or Mr. Holiday [sic] or approval by their immediate supervisors. [Fn. ref. omitted.]

However, "[w]e note that it 'is a well-settled principle that the Internal Revenue Manual does not have the force of law, is not binding on the IRS, and confers

no rights on taxpayers.'" <u>Thompson v. Commissioner</u>, 140 T.C. 173, 190 n.16 (2013) (quoting <u>McGaughy v. Commissioner</u>, T.C. Memo. 2010-183, slip op. at 20). On the issue of section 6751(b) compliance, the IRS's use of a form other than the one prescribed by internal administrative regulations does not preclude a finding that the supervisory approval requirement has been satisfied. <u>See</u> <u>PBBM-Rose Hill, Ltd. v. Commissioner</u>, 900 F.3d 193, 213 (5th Cir. 2018) ("The plain language of § 6751(b) mandates only that the approval of the penalty assessment be 'in writing' and by a manager"). Section 6751(b) does not require written supervisory approval on any particular form. <u>See</u> <u>Deyo v. United States</u>, 296 F. App'x 157, 159 (2d Cir. 2008) (requiring "only personal approval in writing, not any particular form of signature or even any signature at all").

It is true that Agent Wozek's name does not appear on the Form 5701 by which he solicited Mr. Lynch's approval, but this fact is immaterial. By Agent Wozek's declaration, the Commissioner showed (and Palmolive did not dispute) that Agent Wozek "prepared the Forms 5701 * * * and 886A, * * * and gave it to * * * [his] immediate supervisor, Michael Lynch, for approval". What must be "in writing" to satisfy section 6751(b)(1) is the supervisor's approval. The statute does not require any particular writing by the individual making the penalty determination, nor any signature or written name of that individual.

It is also true, as Palmolive notes, that the pages that bear the supervisors' signatures do not mention the specific penalties they approved. However, the Form 5701 that Mr. Lynch signed did state "Estimated Flowthrough Penalty (See F886A)", and to that form were attached Forms 886A that do justify the gross overvaluation and negligence penalties. Likewise, the very purpose of the Form 5402-c that Mr. Lee signed (as "Approved by") was to approve the proposed FPAA (which he also signed), to which was attached the Form 886A specifying all four penalties. We conclude that in both of these instances, the requirement that "the initial determination of such assessment is personally approved (in writing) by the immediate supervisor", sec. 6751(b)(1), is fully satisfied.

### 3. Disregard of rules or regulations

Section 6662 is entitled "Imposition of accuracy related penalty on underpayments". Subsection (b) applies the accuracy-related penalty to circumstances listed in eight paragraphs, three of which are relevant here:

> SEC. 6662(b). Portion of Underpayment to Which Section Applies.--This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:
>
> (1) Negligence or disregard of rules or regulations.
>
> (2) Any substantial understatement of income tax.

    (3) Any substantial valuation misstatement under chapter 1.

The fourth penalty relevant here is the penalty for "gross valuation misstatements" under subsection (h)(2). Although the title of section 6662 refers to a (singular) "penalty", section 6662 imposes various distinct penalties, each subpart of which must be separately approved for purposes of section 6751(b)(1).

However, Palmolive contends that one of the section 6662 subparts contains more than one distinct penalty, which (it contends) must be separately approved. Although Agent Wozek obtained Mr. Lynch's supervisory approval for the "negligence" penalty under section 6662(b)(1), Palmolive argues that the Commissioner "has not asserted that an initial determination was made with respect to the disregard of rules or regulations grounds for the section 6662 penalty; accordingly, he has conceded noncompliance with section 6751(b)(1) on this penalty ground and, as a matter of law, the disregard of rules and regulations penalty does not apply." That is, Palmolive would subdivide section 6662(b)(1) into two penalties--one penalty for "negligence", and a separate penalty for "disregard of rules or regulations".

Even if we were to assume that Palmolive's splitting of section 6662(b)(1) is warranted (which seems doubtful), it would not have the effect for which

Palmolive argues. If "disregard of rules or regulations" is a distinct penalty, then it was indeed <u>not</u> determined by Agent Wozek (nor approved by Mr. Lynch) in July 2008, since they mentioned only "negligence", but it <u>was</u> determined by Appeals Officer Holliday (and approved by Mr. Lee) on the last page of the FPAA (the Form 886A), which listed all the applicable penalties, including "[a] 20% penalty due to negligence or intentional <u>disregard of the rules and regulations</u>". That is, if "disregard" should be deemed included with "negligence", then it was determined and approved in July 2008; but if "disregard" should be deemed distinct from "negligence", then it was determined and approved in June 2014. In either event, section 6751(b)(1) was satisfied.

4. <u>Timing and sequence</u>

Palmolive argues that the Commissioner "has not explained when Agent Wozek purportedly made his initial determination" of the gross valuation and negligence penalties and "has not produced any contemporaneous document demonstrating how or when Appeals Officer Holliday made the initial determination to assert penalties". In both instances, however, the subordinate employee made his respective "initial determination" at the time he solicited his supervisor's approval. It is true that, in the context of the Commissioner's motion for partial summary judgment, factual inferences are to be drawn in the manner

most favorable to Palmolive; but we know of no other inference about the timing of the "initial determination" that would not be mere speculation. Palmolive had the obligation under Rule 121(d) to "set forth specific facts showing that there is a genuine dispute for trial", but it did not do so. Palmolive points to no earlier act by Agent Wozek or Appeals Officer Holliday that might have been an "initial determination" for which approval was not obtained.

Palmolive attempts to cast doubt on the timing of the "initial determination" and approval as to the negligence penalty by pointing out that negligence, though apparently approved on the Form 5701 sent in July 2008, was not thereafter asserted in the 30-day letter sent in October 2008:

> Further muddying the waters, while the NOPA [the Form 5701 and attachments] raises both the gross valuation misstatement and negligence penalties, the Summary Report [the 30-day letter] issued approximately three month[s] later asserts only the gross valuation misstatement penalty. Seven months after that, the 60-Day Letter goes back to raising both gross valuation misstatement and negligence.

We see nothing here to contradict the July 2008 approval of the negligence penalty. Even if the omission of negligence from the 30-day letter was deliberate and did reflect second thoughts as to negligence, that omission does not disprove (nor even tend against) the manifest and undisputed prior signing of the Form 5701 that had approved the gross valuation penalty and the negligence

penalty, each justified on its own Form 886A. If the IRS later thought better of it and decided in May 2009, with the issuance of the 60-day letter, that it would restore the negligence penalty to its position, the IRS was able to do so in compliance with section 6751(b)(1) because the "initial determination" (emphasis added) of the negligence penalty had been duly approved in July 2008--that is, well before the 60-day letter was issued.

Palmolive argues that the substantial valuation misstatement penalty and the substantial understatement penalty, omitted from the July 2008 Form 5701 but asserted in the July 2014 FPAA, cannot be sustained because "[t]he FPAA represents the Commissioner's 'final determination' of penalties, not the 'initial determination.'" Palmolive's argument conflates the "initial determination" (in Appeals Officer Holliday's submission of the Form 5402-c) with the supervisory approval (by Mr. Lee's signing it and directing issuance of the FPAA). This argument also reflects an imprecision: Supervisory approval of these two penalties was reflected not by the issuance of the FPAA by "CTF-OSC" (which took place on July 28, 2014) but rather six weeks earlier by Mr. Lee's June 13, 2014, signing of the Form 5402-c, by which he directed that the FPAA be issued.

However, even if one views the FPAA itself as the act by which the supervisor approved the penalties reflected therein, it would satisfy

section 6751(b)(1) as to any penalties that had first been "initial[ly] determin[ed]" in the then-recent Form 5701 proposing the FPAA. In such a circumstance, the written supervisory approval of the penalty would have been made "no later than the date the IRS issues the notice of deficiency * * * [or as here, the FPAA] asserting such penalty", Chai v. Commissioner, 851 F.3d at 221, and both the initial determination and the supervisory approval would have occurred before the FPAA was issued.

The IRS complied with section 6751(b)(1), because each penalty at issue here was "initial[ly] determin[ed]" and then approved in writing by a supervisor before being communicated to Palmolive.

To reflect the foregoing,

An appropriate order will be issued.