T.C. Memo. 2011-85

UNITED STATES TAX COURT

RICARDO A. AND TARI SCURLOCK GARCIA, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19813-06.            Filed April 13, 2011.

William A. Roberts and Kyle R. Coleman, for petitioners.

Christopher S. Kippes, Daniel L. Timmons, and Jeffrey L.
Dorfman, for respondent.

MEMORANDUM OPINION

HAINES, Judge:  This case is before the Court on
respondent's motion for partial summary judgment filed pursuant
to Rule 121.[1]

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

We must decide whether over-the-counter foreign currency options entered into by a limited liability company wholly owned by petitioner Ricardo A. Garcia were "foreign currency contracts" under section 1256.

The following facts are based upon the parties' pleadings, affidavits, stipulations, and exhibits in support of and in opposition to the motion for partial summary judgment. They are stated solely for the purpose of deciding the motion and not as findings of fact. See Fed. R. Civ. P. 52(a).

## Background

At the time of the filing of the petition, petitioners resided in Texas.

At all times relevant to this case, petitioner Ricardo A. Garcia owned 100 percent of the membership units of 0464, L.L.C., a Georgia limited liability company (the LLC). The LLC was treated as a disregarded entity for Federal income tax purposes.

On December 4 and 5, 2002, the LLC sold eight foreign currency options to Montgomery Global Advisors V LLC, based in San Francisco, California (Montgomery), for $21,419,177. The LLC also purchased eight offsetting foreign currency options from Montgomery for $21,449,177. The net premium paid by the LLC was $30,000. The maturity date for each option was December 27, 2002. Eight of the foreign currency options had barrier

features.[2]  None of the options were securities traded on a

qualified board or exchange as defined by section 1256(g)(7).

The options pegged to the European euro (euro) and the U.S.

dollar are major foreign currency options, and the options pegged

to the Danish krone are minor foreign currency options.[3]  The

following chart summarizes the foreign currency option positions

held by the LLC on December 5, 2002, the long positions having

been purchased from Montgomery by the LLC and the short positions

having been sold by the LLC to Montgomery:

---

[2]"Barrier" options are a type of option whose exercise is dependent on the option's reaching, or failing to reach, a certain price.  There are two types of barrier options, "knock-in" and "knock-out" options.  "Knock-in" options are not exercisable unless the barrier price is reached before the expiration of the option.  "Knock-out" options, on the other hand, are exercisable only if the barrier price is not reached before the expiration of the option.  The barrier feature does not change the fact that the derivative is an option.  Therefore, a barrier feature does not change our analysis hereunder.

[3]A major foreign currency is a "currency in which positions are * * * traded through regulated futures contracts".  Sec. 1256(g)(2)(A)(i).  The term "regulated futures contract", as defined in sec. 1256(g)(1), means "a contract--(A) with respect to which the amount required to be deposited and the amount which may be withdrawn depends on a system of marking to market, and (B) which is traded on or subject to the rules of a qualified board or exchange."  Major currencies include the U.S. dollar, British pound, Japanese yen, Swiss franc, and the euro.  Minor currencies include the Danish krone.

Foreign Currency Option Positions 1-16

|  | Position | Strike Price | Base Currency | Counter Currency | Premium |
|---|---|---|---|---|---|
| 1 | Long EUR/USD | 1.0006 USD/EUR | €525,000,000 | $525,315,000 | ($5,055,763) |
| 2 | Short EUR/USD | 1.0006 USD/EUR | €525,000,000 | $525,315,000 | 3,759,337 |
| 3 | Long EUR/USD | 1.0005 USD/EUR | €525,000,000 | $525,262,500 | (144) |
| 4 | Short EUR/USD | 1.0005 USD/EUR | €525,000,000 | $525,262,500 | 1,281,570 |
| 5 | Long DKK/USD | 7.4211 DKK/USD | Kr 3,898,404,210 | $525,315,000 | (5,398,005) |
| 6 | Short DKK/USD | 7.4211 DKK/USD | Kr 3,898,404,210 | $525,315,000 | 5,398,005 |
| 7 | Long EUR/DKK | 7.4255 DKK/EUR | €525,000,000 | Kr 3,898,404,210 | (231,350) |
| 8 | Short EUR/DKK | 7.4255 DKK/EUR | €525,000,000 | Kr 3,898,404,210 | 231,350 |
| 9 | Long EUR/USD | 0.9999 USD/EUR | €525,000,000 | $524,947,500 | (5,170,322) |
| 10 | Short EUR/USD | 0.9999 USD/EUR | €525,000,000 | $524,947,500 | 4,096,924 |
| 11 | Long EUR/USD | 1.0000 USD/EUR | €525,000,000 | $525,000,000 | (72) |
| 12 | Short EUR/USD | 1.0000 USD/EUR | €525,000,000 | $525,000,000 | 1,058,470 |
| 13 | Long DKK/USD | 7.4255 DKK/USD | Kr 3,897,997,661 | $524,947,500 | (5,383,430) |
| 14 | Short DKK/USD | 7.4255 DKK/USD | Kr 3,897,997,661 | $524,947,500 | 5,383,430 |
| 15 | Long EUR/DKK | 7.4248 DKK/EUR | €525,000,000 | Kr 3,897,997,661 | (210,091) |
| 16 | Short EUR/DKK | 7.4248 DKK/EUR | €525,000,000 | Kr 3,897,997,661 | 210,091 |

On December 20, 2002, the LLC assigned approximately 0.81 percent of long position 5, 50.20 percent of short position 6, 58.78 percent of long position 9, 49.30 percent of long position 13, and 56.17 percent of short position 14 to the Holy Innocents Building Fund (the Building Fund), an organization claiming section 170(c)(2) charitable status. The Building Fund assumed obligations with respect to the two short positions totaling $5,691,561 and received three long positions valued in the aggregate at $5,694,561, providing for a net value of the positions assigned to the Building Fund of $3,000.

When the LLC assigned 58.78 percent of the long position 9 to the Building Fund, it was valued at $39,192 and the LLC's claimed adjusted basis in the position was $3,039,192. On their 2002 Federal income tax return, petitioners took the position that because long position 9 was a major foreign currency option, the assignment was subject to the mark-to-market rules under section 1256 and Greene v. United States, 79 F.3d 1348 (2d Cir. 1996).[4] Accordingly, because petitioner Ricardo A. Garcia was

---

[4]Petitioners received a tax opinion dated Dec. 31, 2002, from Garza & Staples, P.C., which concluded that: (1) Major foreign currency options are subject to the mark-to-market rules of sec. 1256; (2) the assignment of a major foreign currency option to a charity triggers a termination under sec. 1256 and Greene v. United States, 79 F.3d 1348 (2d Cir. 1996); and (3) petitioners must recognize gains and losses with respect to any major foreign currency option assigned to a charity. Unlike the present case, however, Greene dealt with transfers of regulated futures contracts to a charity. Regulated futures contracts are sec. 1256 contracts. Sec. 1256(b)(1), (g)(1).

the sole member of the LLC, petitioners reported a loss of $3 million with respect to the portion of the long position 9 assigned to the Building Fund.  On the other hand, because long positions 5, 6, 13, and 14 were minor foreign currency options denominated in the Danish krone, petitioners took the position that they were not subject to the mark-to-market rules under section 1256 and did not report any gain or loss from those positions on their 2002 Federal income tax return.

Petitioners filed a timely Federal income tax return for 2002.  A notice of deficiency was mailed to petitioners on September 6, 2006, and petitioners timely filed their petition with this Court.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine issue of material fact and a decision may be rendered as matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988).  The Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  We conclude that there

are no genuine issues of material fact on the section 1256 issue and a decision may be rendered as a matter of law.  Respondent's motion will be granted, denying the purported loss on the assignment of the major foreign currency option to the Building Fund.

I.   Section 1256

Section 1256(a)(1) generally permits certain financial instruments to be marked to market on the last business day of the taxable year and any gain or loss on those contracts to be included on the taxpayer's Federal income tax return.  Any gain or loss with respect to a "section 1256 contract" is treated as a short-term capital gain or loss to the extent of 40 percent of such gain or loss and a long-term capital gain or loss to the extent of 60 percent of such gain or loss.  Sec. 1256(a)(3).  The taxpayer may argue that a loss is characterized as ordinary if the transaction also qualifies as a section 988 transaction.[5]

Section 1256(b) defines a "section 1256 contract" to include:  (1) Any regulated futures contract; (2) any foreign currency contract; (3) any nonequity option; (4) any dealer equity option; and (5) any dealer securities futures contract. Section 1256(b) excludes from the definition of a "section 1256 contract" any securities futures contract or option on such a

---

[5]See sec. 988(a)(1)(A) and sec. 1.988-3(a), Income Tax Regs., which override the characterization of capital losses specified in sec. 1256 if sec. 988 also applies.

contract unless the contract or option is a dealer securities futures contract.[6]

A "regulated futures contract" means a contract with respect to which the amount required to be deposited and the amount which may be withdrawn depend on a system of marking to market and which is traded on or subject to the rules of a qualified board or exchange. Sec. 1256(g)(1). A qualified exchange means a national securities exchange which is registered with the Securities and Exchange Commission, a domestic board of trade designated as a contract market by the Commodity Futures Trading Commission, or any other exchange, board of trade, or other market which the Secretary determines has rules adequate to carry out the purposes of section 1256. Sec. 1256(g)(7).

In contrast, section 1256(g)(2) covers contracts that are not traded on a qualified exchange; i.e., foreign currency contracts. A "foreign currency contract" is defined as a contract:

> (i) which requires delivery of, or the settlement of which depends on the value of, a foreign currency which is a currency in which positions are also traded through regulated future contracts,

> (ii) which is traded in the interbank market, and

---

[6]In 2010 sec. 1256(b) was amended pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, sec. 1601, 124 Stat. 2223 (2010), to additionally exclude from the definition of a "section 1256 contract" any interest rate swap, currency swap, basis swap, interest rate cap, interest rate floor, commodity swap, equity swap, equity index swap, credit default swap, or similar agreement.

(iii) which is entered into at arm's length at a price determined by reference to the price in the interbank market. [Id.]

For a more detailed discussion on the language, requirements, and legislative history of section 1256, see this Court's recent decision in Summitt v. Commissioner, 134 T.C. 248 (2010).

II.  Major/Minor Transactions

The issue before us arises in the context of what are sometimes known as "major/minor" transactions.  Major/minor transactions typically involve a taxpayer's engaging in offsetting "long" and "short" major and minor foreign currency options.  The "long" and "short" positions in each option move inversely in value with respect to each other.  Accordingly, at any particular time the options provide the holder substantially offsetting gain and loss positions.

A major/minor transaction usually involves a taxpayer's assigning a major foreign currency long option that has a potential loss to a charity.[7]  Again, relying on section 1256(g)(2) and Greene v. United States, 79 F.3d 1348 (2d Cir. 1996), the taxpayer takes the position for Federal tax purposes that the major foreign currency long option assigned to the charity is a section 1256 "foreign currency contract" and marks

---

[7]A charity is an organization defined in sec. 170(c)(2) contributions to which are deductible for income tax purposes as charitable contributions.

to market the major foreign currency long option when the option is assigned, recognizing a loss at that time.

In contrast, because the taxpayer takes the position that the assigned minor foreign currency option is not a section 1256 "foreign currency contract", the taxpayer claims that the charity's assumption of the minor obligation does not cause the taxpayer to recognize gain. Further, the taxpayer does not recognize gain when the option either expires or terminates.

III. Summitt

We must decide whether a major foreign currency option comes within the meaning of "foreign currency contract" so as to qualify for section 1256 treatment. This is the same issue we decided in Summitt v. Commissioner, supra. In Summitt, we held that it does not. We see no reason to decide this case differently.

The taxpayers in Summitt were shareholders of an S corporation. The corporation purchased two major foreign currency options and sold two minor foreign currency options. The major foreign currency options were reciprocal put and call positions pegged to the U.S. dollar and the euro.[8] Similarly,

---

[8]In Summitt v. Commissioner, 134 T.C. 248 (2010), we referred to reciprocal "put" and "call" options and, therefore, use the same terms here in our discussion of Summitt. In brief and throughout the record, the parties used the terms "short" and "long" to refer to the subject foreign currency options. Accordingly, we refer to the subject foreign currency options as "short" and "long" options in our discussion of the facts and
                                              (continued...)

the minor foreign currency options were reciprocal put and call positions; however, those positions were pegged to the U.S. dollar and the Danish krone. The net premium paid by the corporation in respect of the two major and the two minor options was $17,500.

Soon after purchasing the two major and the two minor options, the corporation assigned the major call option and the minor call option to a charity. At the time of the assignment, the corporation held a loss position in the major call option and a substantially offsetting gain position in the minor call option. Pursuant to section 1256, the corporation reported the loss on the major call position, and not the gain on its minor call position, on its Federal income tax return.

In Summitt v. Commissioner, supra at 264, we analyzed the "delivery" or "settlement" requirement under section 1256(g)(2), concluding:

> A foreign currency option is a unilateral contract that does not require delivery or settlement unless and until the option is exercised by the holder. An obligation to settle may never arise if the holder does not exercise its rights under the option. It is clear that, as originally enacted in 1982, * * * [the statute] applied only to forward contracts. The statute referred to a contract which required delivery of the foreign currency, not to a contract in which delivery was left to the discretion of the holder.

---

[8](...continued)
analysis of this case. Despite the difference in terminology, the "short" and "long" foreign currency options in this case have the same characteristics as the "put" and "call" foreign currency options discussed in Summitt, respectively. We have not considered whether those terms are interchangeable in any other circumstances.

We further held that the phrase "or the settlement of which depends on the value of" in section 1256(g)(2)(A)(i), which was added to the original statute pursuant to the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 722(a)(2), 98 Stat. 972, was added:

> to allow a cash-settled forward contract to come within the term "foreign currency contract". Foreign currency contracts can be physically settled or cash-settled, but they still must require, by their terms at inception, settlement at expiration. * * * [Id. at 264-265.]

Finding the plain language of the statute to be "dispositive", we held that a foreign currency option does not fall within the meaning of a "foreign currency contract" under section 1256(g)(2). Id. at 265.

The only factual distinction the Court sees between the options discussed in Summitt v. Commissioner, supra, and the options before us is the fact that the options in this case had barrier features. As stated above, a barrier feature does not change the fact that the derivative is an option. Accordingly, consistent with our conclusion in Summitt, we find that the foreign currency options petitioners entered into are not "foreign currency contracts" as defined by section 1256(g)(2), and we sustain respondent's determinations for 2002 with respect to respondent's motion for partial summary judgement.

Petitioners argue that Summitt was decided on an incomplete factual base. Petitioners suggest that because Summitt was

decided without the testimony of a foreign currency options expert, the Court did not have the information needed to make a proper judgment.  We disagree.  <u>Summitt v. Commissioner</u>, 134 T.C. 248 (2010), like this case, was decided on summary judgment and, therefore, the facts were viewed in a light most favorable to the taxpayers.  Under those circumstances <u>Summitt</u> held that foreign currency options were economically distinguishable from contracts covered by section 1256.  <u>Id.</u> at 263-266.  The testimony suggested by petitioners is nothing more than the legal conclusions of a supposed industry expert.  We made our legal determination on the section 1256 issue in <u>Summitt</u>.

We have considered all of petitioner's contentions, arguments, and requests that are not discussed herein, and we conclude that they are without merit or irrelevant.

To reflect the foregoing,

<u>An appropriate order will</u>

<u>be issued</u>.