T.C. Memo. 2011-292

UNITED STATES TAX COURT

TERRY L. AND CHERYL A. WRIGHT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30957-09.                Filed December 22, 2011.

<u>Frank O'Neal Hendrick</u>, for petitioners.

<u>Tammra S. Mitchell</u>, for respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant case is before the Court on
respondent's motion for partial summary judgment pursuant to Rule
121.[1]  The sole issue we are asked to decide is whether an over-

_____

[1]Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, and Rule references
are to the Tax Court Rules of Practice and Procedure.

the-counter foreign currency option entered into by a limited liability company wholly owned by petitioners was a "foreign currency contract" as defined in section 1256(g)(2).

Background

The facts set forth below are based upon examination of the parties' pleadings, moving papers, responses, and attachments.

Petitioners are husband and wife who resided in Tennessee at the time of filing the petition. At all relevant times, petitioners each owned 50 percent of Cyber Advice, LLC (Cyber Advice), a Georgia limited liability company. Petitioner Terry L. Wright (Mr. Wright) was president of Cyber Advice and its member manager. During 2002 Cyber Advice was taxable as a partnership for Federal income tax purposes.

During 2002 Cyber Advice authorized Multi National Strategies, LLC (Multi National), to engage in various over-the-counter foreign currency option transactions. Mr. Wright and Multi National agreed that Beckenham Trading Company, Inc. (Beckenham), would serve as the counterparty to the foreign currency option transactions. During December 2002 Cyber Advice purchased from Beckenham nine over-the-counter foreign currency options, and it sold to Beckenham nine offsetting over-the-counter foreign currency options. In his motion for partial summary judgment, respondent contests only Cyber Advice's

reporting of one of those transactions, so we will describe only that transaction.

On December 20, 2002, Cyber Advice purchased a euro put option for a premium of $36,177,750 (the euro put option).  The euro put option gave Cyber Advice the right to sell to Beckenham on the expiration date of the option €1,237,477,902 for $1,260,000,000.  On December 23, 2002, Beckenham, Cyber Advice, and the Foundation for Educated America, Inc. (FEA), entered into an agreement whereby they assigned the euro put option to FEA.  At the time the euro put option was assigned to FEA, it was valued at $33,018,574.  Relying upon Greene v. United States, 79 F.3d 1348 (2d Cir. 1996), Cyber Advice took the position that the assignment of the euro put option to FEA resulted in a termination as defined in section 1256(c).  With respect to the transaction involving the euro put option, Cyber Advice therefore reported a short-term capital loss of $3,159,176 on Schedule D, Capital Gains and Losses, of its 2002 Form 1065, U.S. Return of Partnership Income.  Because Cyber Advice was taxed as a partnership during 2002, the effects of that loss flowed through to petitioners.

Petitioners timely filed their Federal income tax return for 2002.  Respondent subsequently issued a notice of deficiency, and petitioners timely filed their petition with this Court.

## Discussion

Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Facts are viewed in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). We conclude that partial summary judgment is appropriate in the instant case because the material facts are not in dispute. The parties' only disagreement is the proper interpretation of section 1256.

Section 1256(a)(1) generally permits certain financial instruments to be marked to market on the last business day of the taxable year. Any gain or loss on those contracts is included on the taxpayer's Federal income tax return. Sec. 1256(a)(1). Section 1256(b) defines a "section 1256 contract" to include: (1) Any regulated futures contract; (2) any foreign

currency contract; (3) any nonequity option; (4) any dealer equity option; and (5) any dealer securities futures contract. Section 1256(b) excludes from the definition of a "section 1256 contract" any securities futures contract or option on such a contract unless the contract or option is a dealer securities futures contract. Section 1256(c)(1) applies the mark-to-market rule from section 1256(a) to instances where taxpayers terminate or transfer their obligations or rights under a regulated futures contract.

A "regulated futures contract" means a contract with respect to which the amount required to be deposited and the amount which may be withdrawn depend on a system of marking to market and which is traded on or subject to the rules of a qualified board or exchange. Sec. 1256(g)(1). A qualified exchange means a national securities exchange which is registered with the Securities and Exchange Commission, a domestic board of trade designated as a contract market by the Commodity Futures Trading Commission, or any other exchange, board of trade, or other market which the Secretary determines has rules adequate to carry out the purposes of section 1256. Sec. 1256(g)(7).

Section 1256(g)(2) defines a "foreign currency contract" as a contract:

> (i) which requires delivery of, or the settlement of which depends on the value of, a foreign currency which is a currency in which positions are also traded through regulated future contracts,

(ii) which is traded in the interbank market, and

(iii) which is entered into at arm's length at a price determined by reference to the price in the interbank market.

We have discussed the language, requirements, and legislative history of section 1256 in more detail in Summitt v. Commissioner, 134 T.C. 248 (2010).

Because the euro put option Cyber Advice assigned to FEA was denominated in a major currency, it is a major foreign currency option. A major foreign currency is a "currency in which positions are * * * traded through regulated futures contracts". Sec. 1256(g)(2)(A)(i). Major currencies include the U.S. dollar, British pound, Japanese yen, Swiss franc, and European Union euro.

Petitioners contend that a major foreign currency option is a "foreign currency contract" subject to the mark-to-market rules of section 1256. Petitioners further contend that, pursuant to section 1256(c) and Greene v. United States, supra, when they assigned their major foreign currency option to a charity, that assignment constituted a termination of the contract requiring them to recognize their loss.

Respondent's motion asks us to decide whether a major foreign currency option is a "foreign currency contract" qualifying for section 1256 treatment. We have already decided that issue in Summitt v. Commissioner, supra, and in Garcia v.

Commissioner, T.C. Memo. 2011-85.  In both of those cases, we held that a major foreign currency option is not a foreign currency contract.

In Summitt v. Commissioner, supra at 264, we analyzed the "delivery" or "settlement" requirement under section 1256(g)(2), concluding:

> A foreign currency option is a unilateral contract that does not require delivery or settlement unless and until the option is exercised by the holder.  An obligation to settle may never arise if the holder does not exercise its rights under the option.  It is clear that, as originally enacted in 1982, * * * [the statute] applied only to forward contracts.  The statute referred to a contract which required delivery of the foreign currency, not to a contract in which delivery was left to the discretion of the holder.

We further held that the phrase "or the settlement of which depends on the value of" in section 1256(g)(2)(A)(i), which was added to the original statute pursuant to the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 722(a)(2), 98 Stat. 972, was added:

> to allow a cash-settled forward contract to come within the term "foreign currency contract".  Foreign currency contracts can be physically settled or cash-settled, but they still must require, by their terms at inception, settlement at expiration. * * *

Summitt v. Commissioner, supra at 264-265.  On the basis of our conclusion that the plain language of the statute was "dispositive", we held that a foreign currency option does not fall within the meaning of a "foreign currency contract" under section 1256(g)(2).  Id. at 265.

Petitioners do not attempt to factually distinguish the instant case from <u>Summitt</u> and <u>Garcia</u>.  Rather, petitioners contend that <u>Summitt</u> and <u>Garcia</u> were wrongly decided.  We disagree.  Following <u>Summitt</u> and <u>Garcia</u>, we hold that Cyber Advice's major foreign currency option was not a "foreign currency contract" as defined in section 1256(g)(2).  Accordingly, we will grant respondent's motion for partial summary judgment.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.