# United States Tax Court

T.C. Memo. 2023-136

RITA RENEE PILATE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 12875-20L.                    Filed November 9, 2023.

————————

On her tax return for 2012, P failed to report retirement distributions from an equity account as income, and she did not pay the corresponding tax. In 2015 R issued to P a notice of deficiency of about $120,000 in tax, plus penalties; and when the liability remained unpaid in September 2021, R issued to P a Notice of Intent to Levy. P mailed to R a request for a collection due process ("CDP") hearing. She challenged the validity of the liability and stated that she would like to pursue an offer-in-compromise ("OIC"). The Internal Revenue Service ("IRS") Independent Office of Appeals ("IRS Appeals") requested but did not receive from P the financial documents necessary to evaluate P's eligibility for a collection alternative, and IRS Appeals determined to deny P's request for a collection alternative and P's challenge to the underlying liability. Consequently, IRS Appeals issued a notice of determination sustaining the notice of intent to levy.

After IRS Appeals issued that notice of determination, P proposed an OIC. Several days later, P filed in this Court her petition for review of the NOD. While this case was pending, IRS Appeals accepted P's OIC, but IRS Appeals thereafter held the OIC to have been defaulted when P failed to make payments.

**Served 11/09/23**

[*2]    *Held*:   In this case the Court does not have jurisdiction to review IRS Appeals' determination that P had defaulted on the OIC to which P and IRS Appeals had agreed after the conclusion of her CDP hearing and the filing of this case.

*Held, further*, IRS Appeals did not abuse its discretion by issuing the notice of determination in which it determined to deny P collection alternatives, to deny consideration of P's challenge of her liability, and to sustain the proposed levy.

———————

Rita Renee Pilate, pro se

*Jacob Russin*, for respondent.

## MEMORANDUM OPINION

GUSTAFSON, *Judge*:   This is a collection due process ("CDP") case brought by petitioner, Rita Pilate, pursuant to section 6330(d),[1] in which she asks us to review a notice of determination by the Internal Revenue Service ("IRS") Independent Office of Appeals ("IRS Appeals") that denied Ms. Pilate's request for a collection alternative, denied her challenge to her underlying federal income tax liability for the year 2012, and sustained the IRS's notice of intent to levy to collect that liability.   Respondent, the Commissioner of Internal Revenue, filed a motion for summary judgment.   We will grant the Commissioner's motion.

### *Background*

The following facts are derived from the parties' pleadings and the declaration attached to the Commissioner's motion.   We draw factual inferences in favor of Ms. Pilate, as the nonmoving party, subject to the

———————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., as in effect at the relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), as in effect at the relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.   A citation of a "Doc." in this Opinion refers to a document as numbered in the Tax Court docket record of this case.   Dollar amounts are rounded.

**[\*3]** limitations provided by Rule 121(d), discussed below in Part I.A. When she filed her petition, Ms. Pilate resided in Florida.

*Petitioner's 2012 federal income tax liability*

Ms. Pilate filed late her federal income tax return for 2012 in December 2013 (after receiving an extension to October 2013), and the IRS assessed the tax liability that she had reported, plus penalties. However, Ms. Pilate did not report on that return $387,000 of retirement income that she had received in 2012. (According to the notice of deficiency, the payor, Equity Trust Co., reported the amount on Form 1099–R, "Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.", with the designation "Distrib CD 1."[2]) The IRS examined her 2012 return and issued a notice of deficiency in March 2015, determining an additional tax liability of about $120,000 (apparently including the 10% additional tax of section 72(t)(1) for premature distributions to recipients under age 59-1/2) plus penalties. Ms. Pilate received the notice of deficiency[3] but did not file a Tax Court petition to challenge the deficiency determination. In August 2015 the IRS assessed the liabilities for tax, penalties, and interest. Ms. Pilate did not promptly pay those liabilities.

*Notice of intent to levy and CDP request*

On August 17, 2019, the Commissioner mailed to Ms. Pilate a Notice LT11, "Notice of Intent to Levy and Notice of Your Right to a Hearing" ("NIL"). The NIL advised Ms. Pilate that for 2012 she had a total amount due of $221,810, which consisted of tax, penalties, and interest. The notice further advised Ms. Pilate of her right to request a CDP hearing with IRS Appeals by September 16, 2019.

---

[2] We take judicial notice that the 2012 Form 1099–R instructions explain that code "1" of the distribution codes reportable in box 7 indicates "Early distribution, no known exception (in most cases, under age 59½)."

[3] The Commissioner shows by a U.S. Postal Service Form 3877, "Firm Mailing Book for Accountable Mail", that the notice of deficiency was mailed to Ms. Pilate by certified mail. Ms. Pilate "denies receipt of the notice *in time to petition the court. The petitioner disagrees there was unreported income. There will be written documentation to support this and that the referenced exhibits contain errors.*" (Emphasis added.) That is, she admits receipt of the notice and does not state the date on which she received it. We discuss the issue of receipt of the notice in Part II.B.3 below.

**[\*4]** Ms. Pilate timely filed Form 12153, "Request for a Collection Due Process or Equivalent Hearing". On that form she did not check any box in section 8 for collection alternatives. However, in the "Other" category of section 8, Ms. Pilate stated that she did not believe she should be responsible for penalties, that she had acted "on the advice from the IRS initial communication", and that she would like to make an offer-in-compromise ("OIC"). Section 8 of Form 12153 states that the taxpayer, if she wishes to pursue a collection alternative, should submit a completed Form 433–A, "Collection Information Statement for Wage Earners and Self-Employed Individuals", when she submits her Form 12153. Ms. Pilate did not attach a completed Form 433–A to her Form 12153.

*CDP hearing*

On March 12, 2020, IRS Appeals Officer ("AO") Nicole Mullins, to whom Ms. Pilate's case was assigned, sent to Ms. Pilate a Letter 4837 notifying her that IRS Appeals had received her request for a CDP hearing. The letter advised Ms. Pilate that a telephone conference was to take place on April 14, 2020, at 10 a.m. AO Mullins's letter described the general process of the CDP hearing, what IRS Appeals was required to consider, and what would happen after the hearing concluded. AO Mullins's letter provided two important details regarding the scope of issues in Ms. Pilate's CDP hearing: (1) that Ms. Pilate could not challenge her underlying tax liability because she had a prior opportunity to do so; and (2) that Ms. Pilate must provide a completed Form 433–A "[f]or me to consider an alternative collection method such as an . . . offer in compromise".

Ms. Pilate missed her telephone conference on April 14, 2020, and she did not answer AO Mullins's call made shortly after the scheduled conference time. After leaving Ms. Pilate a voicemail, AO Mullins drafted and sent Letter 4000 reminding Ms. Pilate of the previous Letter 4837 and of her scheduled conference. The letter stated that Ms. Pilate had 14 days to call IRS Appeals and to mail or fax the completed Form 433–A that IRS Appeals had previously requested.

The next day, April 15, 2020, Ms. Pilate called AO Mullins. Ms. Pilate told AO Mullins that she had not received the Letter 4837, and she requested that AO Mullins use a different address for future correspondence in the CDP hearing. AO Mullins proceeded to explain the CDP hearing process to Ms. Pilate and to explain why Ms. Pilate would not be able to challenge her underlying tax liability in the CDP

[*5] hearing. Ms. Pilate decided that she would like to pursue an OIC, and AO Mullins again requested the Form 433–A in addition to a completed Form 656–B, "Offer in Compromise". AO Mullins sent to Ms. Pilate blank copies of these forms via email while on the phone with her. Ms. Pilate was to follow up with AO Mullins on April 29, 2020.

On April 29, 2020, Ms. Pilate and AO Mullins had another phone conference during which Ms. Pilate asked various questions regarding Form 656–B. Ms. Pilate told AO Mullins that, in order to complete the forms, she would need the help of her accountant but that he was currently difficult to meet with because of the Covid-19 pandemic. AO Mullins agreed to suspend Ms. Pilate's case for two months until June 30, 2020, by which time Ms. Pilate was to have submitted her OIC. However, this April 29 conversation was the last time that Ms. Pilate spoke with AO Mullins, because June 30 came and went without contact from Ms. Pilate. AO Mullins attempted to call Ms. Pilate on June 30 and again on July 10, 2020, before preparing and mailing on that date a letter notifying Ms. Pilate that she had 14 days from the time of the letter to respond to AO Mullins, or else the case would be closed and a notice of determination would be issued.

After receiving no response from Ms. Pilate, AO Mullins closed the CDP case on July 29, 2020, and prepared documents to sustain the notice of intent to levy.

*Notice of determination*

IRS Appeals issued a notice of determination on September 21, 2020, sustaining the notice of intent to levy against Ms. Pilate. Under the "Issues You Raised" section of the notice of determination, IRS Appeals noted that while Ms. Pilate had raised the issues of a collection alternative and the underlying liability during her hearing, she did not actually propose an OIC during the hearing and her liability challenge was precluded from the proceedings. The notice advised Ms. Pilate of her right to file a petition in the U.S. Tax Court to challenge the determination.

*Subsequent OIC*

Ms. Pilate submitted an OIC on October 13, 2020 (i.e., shortly after AO Mullins issued the notice of determination), and the IRS eventually accepted that OIC about a year later on October 21, 2021. There is no copy of that OIC (Form 656–B) in the record of this case, and we are unaware of most of the details regarding that OIC. However,

[*6] according to a joint motion for continuance filed by the parties (and signed by Ms. Pilate) in April 2022, Ms. Pilate's final payment under the OIC had been due on March 21, 2022, but Ms. Pilate had requested and the Commissioner had allowed an extension until July 21, 2022.

The Commissioner alleges that a further extension for that final payment was requested and allowed until December 30, 2022, but that Ms. Pilate missed the December 30 deadline, and that the Commissioner issued a default letter on February 27, 2023. Ms. Pilate states a general "disagree[ment]" with these allegations, but she does not explicitly dispute them; and her contention seems to be that she had proceeded in good faith but had been unable to make the payment because of "issues that arose . . . due to litigation (that is still ongoing) in a related case" and because of serious medical problems, medical bills, "and a resulting decrease in income". For purposes of the Commissioner's motion, we assume her contentions about the nonpayment to be true.

*Tax Court proceedings*

On October 19, 2020 (i.e., after IRS Appeals issued the notice of determination but before Ms. Pilate submitted the OIC), Ms. Pilate timely filed a petition with this Court, challenging the Commissioner's determination to sustain the levy because she disagreed "with the IRS's addition of taxable retirement income, assessment of penalties and interest", because "a levy would constitute financial hardship for [her]", and because she "proposed an offer in compromise" which had not yet been acknowledged by the Commissioner.

We set a trial date for December 13, 2021, but the parties jointly moved for a continuance on October 15, 2021, because of "significant progress" regarding the OIC proposed by Ms. Pilate in October 2020. We granted the motion and rescheduled the trial for May 9, 2022. Before the trial could occur, the parties on April 5, 2022, filed another joint motion to continue, on the grounds that the due date for Ms. Pilate's final payment for the OIC agreement had been extended from March 21 to July 21, 2022, and the parties expected that a trial would be unnecessary if Ms. Pilate met her final payment deadline. In January 2023 we rescheduled the trial for May 8, 2023.

However, on March 9, 2023, the Commissioner filed a motion for summary judgment and a declaration in support of the motion. The declaration included IRS transcripts and other documents from the CDP hearing record that show the facts set out above. We issued an order

**[\*7]** directing Ms. Pilate to respond to the motion, and in that order we provided Ms. Pilate an informational sheet describing the requirements for a response to a motion for summary judgment, and we encouraged Ms. Pilate to initiate a telephone conference if she was unsure how to proceed. We instructed Ms. Pilate that, in her response, she should "state, by number, any assertion with which she disagrees, . . . explain the reason for her disagreement, and . . . cite whatever evidence supports her position." We also notified Ms. Pilate that Rule 121(d) authorizes the Court to enter a decision against her if she did not so respond.

Ms. Pilate initiated a conference call with the Court on March 28, 2023 (one day past her filing deadline for her response to the motion for summary judgment), expressing concern over her ability to provide a response to the motion. Ms. Pilate requested, and we permitted, an extension of time to accommodate her health problems and to "allow time for her participation in 'Settlement Day'", at which she could consult with volunteers from low-income taxpayer clinics. Ms. Pilate subsequently submitted her response to the Commissioner's motion for summary judgment. With that response she did not provide any affidavit, nor any unsworn declaration under 28 U.S.C. § 1746, nor any other documents.[4] The Commissioner filed a reply.

### *Discussion*

### I. *General legal principles*

#### A. *Summary judgment*

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant a motion for summary judgment if, after considering the evidence in the light most favorable to the

---

[4] Throughout her response (Doc. 27) to the motion for summary judgment, Ms. Pilate made these statements: "The petitioner asserts there are additional relevant documents that exist that were not set out in the respondent's motion." (¶ 4.) "There will be written documentation to support this and that the referenced exhibits contain errors." (¶ 7.) "Written documentation and witnesses will be presented." (¶¶ 13, 14, 15, 16.) "Written documentation will be used to rebut the exhibits." (¶ 18.) "Written documentation will be provided." (¶¶ 19, 40.) "The petitioner will provide written documentation and testimony to challenge the exhibits." (¶ 23.) "Written documentation will be used for rebuttal." (¶ 26.) "Multiple witnesses and written documentation will be provided." (¶¶ 30, 34, 37.) "[T]his will be supported with written documentation." (¶ 38.) She did not submit any documentation with her response nor thereafter.

**[\*8]** nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 121(a)(2); *see Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). A moving party must demonstrate, through "pleadings, answers to interrogatories, depositions, admissions and any other acceptable materials", that there is no genuine dispute of material fact. *Fla. Peach Corp.*, 90 T.C. at 681.

While the burden to make that showing is on the moving party, the nonmoving party "may not rest on the allegations or denials in that party's pleading" to oppose a motion for summary judgment. Rule 121(d); *see also Lipka v. Commissioner*, T.C. Memo. 2022-116, at \*6. Instead, "[t]he nonmovant must respond, setting forth *specific* facts and supporting those facts as required by Rule 121(c) [i.e., by "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"], to show that there is a genuine dispute of fact for trial." Rule 121(d); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 324 (1986). For the reasons discussed below, we hold that the Commissioner's motion satisfies the standard for summary judgment and that Ms. Pilate's response fails to do so.

B. *Agency-level CDP review*

Any person who neglects or refuses to pay his tax liability within 10 days of notice and demand for payment may be subject to a levy on his property by the Secretary under section 6331(a). Prior to collection, the Secretary must notify the taxpayer of the intent to levy and of the taxpayer's right to an administrative appeal. §§ 6330(a), 6331(d). The right to administrative appeal can be invoked by requesting, in writing, a hearing with IRS Appeals. § 6330(b)(1).

During a CDP hearing, IRS Appeals must: (1) verify that applicable law and administrative procedures have been met; (2) consider any relevant issues raised by the taxpayer; and (3) determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." § 6330(c)(1)–(3).

A taxpayer may raise issues described in section 6330(c)(2) in her request for, and during, her hearing. The two issues relevant to the Commissioner's motion now before us are collection alternatives and a

**[\*9]** challenge to the underlying liability.[5] *See* § 6330(c)(2). One such collection alternative, and the only one Ms. Pilate raised, is an OIC. The taxpayer is responsible for proposing an OIC and must provide the requisite documentation to the IRS Appeals officer handling her case. Treas. Reg. § 301.7122-1(d).

A taxpayer may also challenge her underlying liability in a CDP hearing, but only if she did not receive a statutory notice of deficiency or if she did not otherwise have a prior opportunity to dispute the underlying liability. § 6330(c)(2)(B).

In making its determination, IRS Appeals is required to consider all issues properly raised by a taxpayer during the course of her CDP hearing. § 6330(c)(3). Conversely, if a taxpayer did not properly raise an issue during her CDP hearing, or if a taxpayer raised an issue after the conclusion of the CDP hearing, then we do not have jurisdiction to consider it because it was never a part of the Appeals officer's determination. *Giamelli*, 129 T.C. at 113; *Sego v. Commissioner,* 114 T.C. 604, 612 (2000) ("Matters raised after a hearing do not reflect on whether the determinations . . . were an abuse of discretion.").

C.    *Tax Court review*

We review CDP determinations under an abuse-of-discretion standard for all issues except a challenge to the underlying liability, which receives de novo review if validly raised during the CDP hearing. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Under the abuse-of-discretion standard, we determine whether IRS Appeals' determination to sustain the levy was arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for IRS Appeals', nor do we independently decide whether the levy should be withdrawn. *See id.*

---

[5] In her petition Ms. Pilate also raised hardship. However, because she did not raise hardship in her request for a CDP hearing nor during the hearing itself (rather, she raises it for the first time as an excuse for her nonpayment of her obligation under the later OIC), we do not have jurisdiction to consider it in this CDP case. *See Giamelli v. Commissioner*, 129 T.C. 107, 112–13 (2007).

**[\*10]** II.   *Analysis*

A.   *Wholesale noncompliance with Rule 121*

Ms. Pilate's response does not comply with Rule 121. Despite our order setting out the requirements of the Rule, she makes only general assertions that she "disagrees" with the Commissioner's assertions, without stating any specific contrary facts that she attests. She foretells future showings of documents, witnesses, and facts to support a finding of a genuine dispute of material fact, but what those facts and documents are and who those witnesses are is unknown because Ms. Pilate provided no further detail. While Ms. Pilate purported to respond to each paragraph of the Commissioner's motion, her lack of specific allegation or supporting evidence leaves the Court with nothing more than her conclusory statements. Ms. Pilate's response therefore does not comply with the standards of Rule 121(d) or with our instructions to her.

Our analysis could end there. However, we reach the same result and grant the motion even if we consider Ms. Pilate's particular contentions.

B.   *CDP hearing requirements*

1.   *Verification and balancing*

As noted in Part I.B, in every CDP hearing IRS Appeals must verify that all applicable law and administrative procedures have been met, § 6330(c)(1), (3)(A), must consider relevant issues raised by the taxpayer, § 6330(c)(2)(A), (3)(B), and must balance any collection action with the "legitimate concern of the person that any collection action be no more intrusive than necessary", § 6330(c)(3)(C). While Ms. Pilate did not raise in her petition the first and third issues—verification and balancing—she did "disagree" in her response to the Commissioner's motion for summary judgment that the Commissioner met these two requirements. *See* Doc. 21, ¶¶ 33, 40. However, her denials lack specific factual assertions or supporting documentation. Meanwhile, the Commissioner provided AO Mullins's case activity log demonstrating that she did meet the verification requirement, and the balancing analysis is discussed in the notice of determination. Therefore, we hold that Ms. Pilate did not raise any genuine dispute as to whether IRS Appeals met its obligations regarding the first and third requirements of the CDP hearing.

**[\*11]**     2.     *Offer-in-compromise*

Ms. Pilate requests that this Court review IRS Appeals' determination regarding her OIC. To the extent that Ms. Pilate raised the issue of an OIC as a collection alternative during her CDP hearing (i.e., by mentioning her desire for an OIC in her request for a CDP hearing), we hold that AO Mullins did not abuse her discretion by declining to agree to an OIC. At no point during the CDP hearing did Ms. Pilate provide AO Mullins with an actual proposed OIC (on Form 656) or with the financial information (on Form 433–A) that might have justified an OIC—despite multiple opportunities and requests to do so. Therefore, given the insufficient information she had before her in considering a collection alternative, we find no abuse of discretion by AO Mullins in sustaining the proposed levy in the notice of determination issued in September 2020. *See, e.g., Yoel v. Commissioner*, T.C. Memo. 2012-222, at \*8.

It appears, however, that Ms. Pilate's principal OIC-related criticism of IRS Appeals concerns its later defaulting on the October 2020 OIC when, because of her hardships, she failed in December 2022 to make the payments she had agreed to make. But, as is discussed above, this Court may only review information which the AO had before her during the CDP hearing. *See Giamelli*, 129 T.C. at 113. Of necessity, IRS Appeals must exercise its discretion in light of the facts that exist at the time it issues its notice of determination. Here, IRS Appeals did not receive the OIC until *after* the conclusion of the CDP hearing and the issuance of the notice of determination. Therefore, we cannot fault IRS Appeals for not knowing the future, and we do not have jurisdiction to consider a later-submitted OIC in our review of the notice of determination.

3.     *Underlying liability and prior opportunity*

In this CDP case we have jurisdiction to entertain Ms. Pilate's challenge to her underlying tax liability only if she can demonstrate that she "did not receive any statutory notice of deficiency . . . or did not otherwise have an opportunity to dispute such tax liability." § 6330(c)(2)(B).

Ms. Pilate did attempt to challenge her underlying liability during the CDP hearing, despite the fact that the IRS had sent her a notice of deficiency (which she did not challenge in a deficiency case in the Tax Court). However, she insists that she did not have a prior

**[\*12]** opportunity for a liability challenge because, as she states in her response to the Commissioner's motion for summary judgment, she did not *receive* a notice of deficiency "in sufficient time to petition the Tax Court." Section 6330(c)(2)(B) does indeed allow a liability challenge "if the person did not *receive* any statutory notice of deficiency", but Ms. Pilate implied that she did receive it—albeit not (she said) "*in sufficient time* to petition the Tax Court." (Emphasis added.) She provided no explanation, precise or approximate, as to when she received the notice of deficiency.

The Commissioner, on the other hand, provided a copy of the certified mail list showing the address for and the date on which the notice of deficiency was sent. The address is the same as the one provided by Ms. Pilate on her 2011, 2012, and 2013 tax returns. This Court maintains that "[i]n the absence of clear evidence to the contrary, the presumptions of official regularity and of delivery justify the conclusion that the statutory notice was sent." *Sego*, 114 T.C. at 611. Once that presumption is established, a rebuttable presumption of receipt may follow. As we explained in *Buffano v. Commissioner*, T.C. Memo. 2016-121, at \*6–7:

> Evidence that [the Commissioner] properly mailed the notice[] of deficiency raises a presumption that [it was] actually received by the addressee, namely, [the taxpayer]. . . .
> The Court may find on the basis of the foregoing presumption that [the taxpayer] did in fact receive the notice[] of deficiency unless he adequately rebuts the presumption through credible testimony or other competent evidence that he did not in fact receive [it].

Thus, the burden was on Ms. Pilate to rebut the presumption of receipt with testimony or documentary evidence showing that the notice was not received.

Ms. Pilate has not met that burden here. Her allegation is not in an affidavit or declaration under penalty of perjury but is simply a statement in her response. Perhaps more important, her statement is fatally vague. By stating simply that the notice of deficiency was not received "in sufficient time to petition the Tax Court", she implies that she did indeed receive the notice before the due date of a Tax Court petition but she leaves open the question of *precisely* when. Maybe she means she received the notice on the last day for filing, and that might

**[*13]** indeed be a winning scenario for her. Or maybe she received it much earlier than the last day but she thinks that filing a timely Tax Court petition was not possible (not practicable? not expedient?) in her particular circumstances. To resist summary judgment, all she had to do was raise a genuine dispute of fact by making a forthright showing, with evidence, that she did not receive the notice of deficiency; but instead she has left us to guess the precise meaning of her vague and unsworn allegation, perhaps hoping we will assume a scenario in her favor. We decline to do so. She did not give an unequivocal statement as to nonreceipt of the notice of deficiency, and we hold that Ms. Pilate is not entitled to challenge her underlying liability and that AO Mullins did not abuse her discretion when she declined to consider Ms. Pilate's challenge of her underlying tax liability.

Moreover, even if Ms. Pilate was entitled to contest her liability at the CDP hearing and in our Tax Court case reviewing that hearing, she failed, in responding to the motion for summary judgment, to make any showing that her liability was other than as the IRS assessed it. The main issue underlying the deficiency that the IRS determined was her receipt of retirement income. As a general rule, such income is taxable.[6] If Ms. Pilate would resist summary judgment by urging that, for some non-obvious reason, she does not really owe income tax on the retirement distribution that the IRS treated as taxable, then it was incumbent on her not merely to allege that the distribution was not taxable but actually to make a showing based on "materials" of the sort permitted in Rule 121(c). Instead, she relies solely on a statement in her response that is devoid of particularity: "The petitioner disagrees there was unreported income. There will be written documentation to support this . . . ." Doc. 27, ¶ 7. But under Rule 121, the time for Ms. Pilate to come forward with that "documentation" was no later than her response to the motion for summary judgment. In the absence of such documentation, she has not raised any genuine issue that calls for a trial.

III.    *Conclusion*

IRS Appeals did not abuse its discretion when it denied Ms. Pilate a collection alternative, denied Ms. Pilate's challenge to her underlying

---

[6] Section 61(a), as in effect in the year at issue, provided that "gross income means all income from whatever source derived, including . . . (9) Annuities; [and] . . . (11) Pensions".

**[\*14]** liability, and sustained the notice of intent to levy.  As a result, we will grant the Commissioner's motion for summary judgment.

To reflect the foregoing,

*An appropriate order and decision will be entered.*